CREASY CORPORATION, Respondent, vs. ENZ BROTHERS COMPANY, Appellant.

*March 16—April 11, 1922.*

*"Blue sky" law: Licenses: Nature of security sold: Memberships in mercantile association: Contracts for service.*

1. Within the meaning of sub. (c), sec. 1753—48, Stats., defining the word "securities" for the sale of which a permit is required by sec. 1753—57 as "any bonds, stocks, notes or other obligations or evidences of indebtedness," the phrase "of indebtedness" refers to "obligations" as well as to "evidences," and, even if not, the term "obligations" is limited to those similar in character to the ones specified, and means money obligations, not other contractual obligations.
2. A contract of membership in an association which gave the member the right to purchase goods from the association at a small stipulated percentage above cost, but which gave no other interest in the association to the member, was not an "obligation" for the sale of which a permit was required under secs. 1753—48 to 1753—68, Stats. (the "Blue sky" law).

APPEAL from a judgment of the circuit court for Brown county: HENRY GRAASS, Circuit Judge. *Affirmed.*

January 24, 1921, the defendant corporation entered into the following contract with plaintiff and paid the consideration of $300 therein mentioned and $3 for a trade journal:

*"Service Contract.*

"This certifies that *Enz Brothers Company* of Denmark, Wisconsin, hereinafter styled 'the member,' has paid to the *Creasy Corporation* the sum of three hundred dollars ($300), in consideration of which, together with the mutual covenants hereinafter set out, all of which are agreed to by said member, entitles said member to the rights and services as follows, to wit:

"The member will be entitled for a period of twenty (20) years from the date of this contract to purchase any merchandise which the *Creasy Corporation* may have or can secure, at cost plus the necessary expense of doing business.

"The member may have credit with the *Creasy Corpora-*

50    SUPREME COURT OF WISCONSIN. [Apr.

Creasy Corporation v. Enz Bros. Co. 177 Wis. 49.

*tion* in the sum of three hundred ($300) dollars.    Said credit to be in accordance with the following terms:

"On all ordinary merchandise shipped from any warehouse of the *Creasy Corporation* or any of the affiliated houses to be invoiced with five (5%) per cent. added to cost of such merchandise, subject to a discount of two (2%) per cent., if such invoice is paid in full within ten (10) days from its date.    On all drop shipments, that is merchandise of any kind shipped direct to member from any factory or by any producer, and by such manufacturer or producer classed as a drop shipment, to be invoiced with three (3%) per cent. added to cost, subject to a discount of two (2%) per cent. if such invoice is paid in full five (5) days from its date.    All sugar, unless otherwise specially quoted, to be invoiced with three (3%) per cent. added to cost, subject to a discount of two (2%) per cent., if such invoice is paid in full five (5) days from its date.

"On all purchases in excess of three hundred ($300) dollars, cash or its equivalent must accompany orders.

"The *Creasy Corporation* agrees to mail all of its regular and special quotations to the member, and to supply to said member all price lists, quotations, and advices now or hereafter given to all of its shareholders and members, and to render to the member the same service that it renders to its shareholders.

"By courtesy the said member may have the privilege of buying merchandise from the affiliated houses upon the same terms as their shareholders.

"It is understood and agreed to by the member (service contract holder) that he will not have the right to trade this contract out in merchandise.    All merchandise must be paid for in accordance with the terms set out in this contract.

"This contract shall be transferable only to a retail merchant who is acceptable to the *Creasy Corporation*.    Such transfer to be made by proper indorsement upon the back of this contract.

"No transfer will be made until the member to whom this contract is issued shall have paid in full any indebtedness due the *Creasy Corporation* or any of the affiliated houses."

It was stipulated that more than 250 similar contracts

Creasy Corporation v. Enz Bros. Co. 177 Wis. 49.

were sold to merchants residing in the vicinity of Green Bay and in the state of Wisconsin and that business had been transacted with members thereunder. The defendant had bought goods from plaintiff under the contract aggregating over $2,000 and plaintiff had in all respects complied with its terms and promises. This action is for the recovery of the purchase price of $303.34 for goods bought. The defendant counterclaimed for the sum of $303 paid for the membership contract and journal, alleging that the contract constituted securities under secs. 1753—48 to 1753—68 of the Statutes, and that plaintiff had not obtained the required permit to sell such securities in this state—hence the sale was void and plaintiff must return the purchase price. The court held that the contract did not come within the statute and entered judgment for plaintiff for the amount claimed in the complaint which was shown to be due. The defendant appealed.

For the appellant the cause was submitted on the briefs of *Cady, Strehlow & Kaftan* of Green Bay.

For the respondent there was a brief by *Kittell, Jaseph & Young*, attorneys, and *Lynn D. Jaseph*, of counsel, all of Green Bay, and oral argument by *Mr. Jaseph..*

VINJE, C. J. Sec. 1753—57, Stats. 1919, provides that "The sale of every security issued by any company without a permit of the commission authorizing the same then in effect, shall be void," and sub. (c), sec. 1753—48, Stats. 1919, defines security or securities as follows: " 'Security' or 'securities' means and includes any bonds, stocks, notes or other obligations or evidences of indebtedness or of title which constitutes evidence of, or is secured by, title to, interest in or lien upon any or all of the property or profits of such company."

It is the claim of the defendant that the contract in question comes under the term "or other obligations" mentioned

in the statute.    It will be noted that the statute does not speak merely of "other obligations," but of "other obligations or evidences of indebtedness."    We think the true reading of the language is as though it read "other obligations of indebtedness" or "other evidences of indebtedness."    But if this be not so, the same result would follow if the word "obligations" stood alone and divorced from the words "of indebtedness," for it stands with words such as "securities, bonds, stocks, notes, or other evidences of indebtedness."    These words all connote financial obligations to pay money or are securities therefor.    The doctrine of *noscitur a sociis* would apply to the words "or other obligations" if they are read as standing alone, and they would be construed to mean money obligations and not other contractual obligations.    To enlarge them to include the latter would practically prevent, except with permission of the commission, the entering into contracts of any kind in this state by "companies" defined in sub. (b), sec. 1753—48. Such was not the purpose of the statute.    Its purpose was to protect the residents from the purchase of worthless obligations for the payment of money in whatever form such obligations took.    In the contract in question there is no obligation to pay money on the part of the plaintiff.    Its obligation is to render a certain service to the defendant for a period of twenty years, which service it has fully rendered up to the date of the suit.    The service consisted in selling its goods to the member for cost plus a very small per cent. of profit.    The member acquired no rights either in the capital or profits of the company.    The contract would be fully discharged by plaintiff rendering the specified service for the required length of time.    It is clear that our railroad commission correctly held, as the evidence shows, that the contract in question does not come within the purview of the statute.

Much reliance is placed by the defendant upon the case of *People v. Clum*, 213 Mich. 651, 182 N. W. 136.    In that

case the defendant sold shares of the par value of $10 each in an association organized under the common law. The court very properly held that such "shares" were "stock" within the meaning of its Blue Sky Law. A security was sold that purported to give the holder a *pro rata* share or per cent. in both the capital and profits of the association. We have no such case before us. It may be argued that in one sense every contract is a security because it guarantees to the parties thereto something of value. But as before stated, the Blue Sky Law was enacted for the purpose of protecting against the sale of worthless money obligations and not against entering into other contracts where service is to be rendered, as here, or other obligations are incurred that do not partake of the sale of securities or of a sharing in either the capital or profits of a company.

*By the Court.*—Judgment affirmed.