# Lewis, Banking Commissioner v. Creasey Corporation.

(Decided March 23, 1923.)

## Appeal from Franklin Circuit Court.

1. Appeal and Error—In Absence of Evidence, it is Presumed it was Sufficient to Sustain Findings.—Where none of the numerous letters submitted with affidavits below on an issue of fact were contained in the record, the judgment must be affirmed as to that issue under the rule that, in the absence of the evidence heard in the trial court, the Court of Appeals will presume it was sufficient to sustain the finding.

2. Statutes—Primary Rule of Construction is to Ascertain Intention from Words Employed.—The primary rule for the construction of statutes is to ascertain the intention of the legislature from the words it employed in enacting the statute, and not what the legislaure may have intended but did not express.

3. Statutes—Words May be Given Contracted Meaning, Dependent on Context.—Words actually employed by the legislature may be given a contracted meaning, dependent upon the connection in which they are employed, and as viewed in the light of the general purpose or scheme the legislature had in mind.

4. Statutes—Words not Given Literal Meaning if That Would Carry Operation Far Beyond Purpose.—Words in a statute will not be given their literal meaning, when to do so would evidently carry the operation of the statute far beyond the purposes which the legislature had in view, and make it apply to transactions never contemplated by the legislature.

5. Licenses—Blue Sky Law is Limited to "Contracts" Which are "Securities."—Under Blue Sky Law, section 2, making corporations which sell any contract, stock, bond, or other securities investment companies subject to the terms of the act, the word "contract" was not intended to include all classes of contracts which may be an instrumentality for the perpetration of fraud, but is limited to what is ordinarily understood as a security investment, since the general purpose of the law is to protect investors in "securities," which are defined as written assurances for the return or payment of money, evidences of indebtedness; and necessarily mean the investment of funds in a designated portion of the assets and capital of a concern, with a view of receiving a profit through the efforts of others than the investor, and therefore that law does not apply to the sale by a wholesale grocer of service contracts to retail dealers.

6. Appeal and Error—Opinion on Motion to Dissolve Temporary Injunction is Not Binding on Appeal on the Merits.—A former opinion by members of the Court of Appeals, denying a motion to dissolve a preliminary injunction, is not binding on the Court of Appeals on a subsequent appeal of the case upon its merits, after

permanent injunction is issued, but it may be looked to for its persuasive effect.

CHAS. I. DAWSON, Attorney General, and MARTIN T. KELLY, Assistant Attorney General, for appellants.

J. P. HOBSON and WOODWARD & WARFIELD for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellee and plaintiff below, the Creasey Corporation, was organized under the laws of Delaware with an authorized capital of three million dollars ($3,000,000.00), and its business is the operation of wholesale grocery houses in the different states of the union wherein it does business. One of its methods of procuring customers is that of selling to retail dealers what it denominates as a "service contract," for which it charges three hundred dollars ($300.00), and in consideration therefor it obligates itself to the purchaser of the contract to furnish him groceries for his store for a period of twenty years at only five per cent increase of the original cost to plaintiff plus the actual necessary expense of conducting the business subject, however, to certain enumerated discounts for the payment of cash within a limited time after the furnishing of the goods. It is also agreed in the contract that the customer may at all times during its life be entitled to a standing credit with the company for the three hundred dollars he paid. Provisions for transferring the contract are contained in it, and perhaps some other minor matters not pertinent to the question involved. Upon the enactment of chapter 125, Acts of 1920, page 582, commonly known as "The Kentucky Blue Sky Law," and which is now sections 883e-1-883e-26, both inclusive, of the present Kentucky Statutes, plaintiff, as it claims out of abundant caution, complied with the provisions of that act and obtained permission from the State Banking Commissioner, whom the act appoints to enforce and administer its provisions, the right and privilege to sell such service contracts in this Commonwealth. In October, 1922, it received notice from the present Banking Commissioner, the appellant and defendant below, James P. Lewis, to appear before him in his office at Frankfort, to show cause why its right to sell such contracts should not be revoked. The matter pended for a while and in December following the right was suspended by defendant and this suit was filed by

plaintiff against him in the Franklin circuit court to enjoin him from prosecuting plaintiff for failure to comply with the act and from otherwise interfering with its right to continue to sell such contracts in Kentucky. Upon a hearing of the motion the circuit judge granted the injunction which Chief Justice Hurt, with three other members of this court, declined to dissolve on a motion made before him for that purpose. The case was then finally heard by the circuit court upon affidavits and exhibits filed therewith, pursuant to agreement between the parties, and the temporary injunction was perpetuated, and this appeal by the commissioner challenges the correctness of that judgment.

The right of the commissioner to interfere with the business of plaintiff in the respects mentioned or to prosecute it for a failure to comply with the terms of the act is denied upon the ground that its terms do not include or apply to the character of contract involved, which proposition is denied by defendant, and that is the sole question for determination.

Before taking up the concrete question, we deem it appropriate to say that it is the contention of the commissioner, and which plaintiff denies, that the character of contract involved is a fraudulent one, or at least it possesses potentialities for the perpetration of fraud, and that a number of plaintiff's customers have been actually defrauded and that the whole scheme is bottomed upon unsound financial business principles. With some of the affidavits filed as evidence on behalf of plaintiff upon that issue 117 letters from the holders of such contracts in Kentucky were filed, and with defendant's affidavit about 52 letters from other customers were also filed, but none of those letters was brought here with the record. If, therefore, that issue of fact, which is strongly asserted by defendant and with equal positiveness denied by plaintiff, were pertinent and material to the determination of the case, we would be compelled to affirm the judgment as to that issue under the well known rule of practice that in the absence of the evidence heard by the trial court we will presume that it was sufficient to sustain its finding. But we do not consider that issue as involved in this case, since as we view the record the only question before us is the correct construction of the statute so as to determine whether a contract of the nature of the one involved comes within its purview.

The sources of our aid, therefore, are the rules for the construction of statutes, the primary one of which is to ascertain the intention of the legislature from the words it employed in enacting the statute and not what it may have intended but did not express. Another one is that words actually employed by the legislature may be given a contracted meaning dependent upon the connection in which they are employed, and as viewed in the light of the general purpose or scheme which the legislature had in mind when it passed the statute. Subsidiary to those rules is the further one that words will not be given their literal meaning when to do so would evidently carry the operation of the statute far beyond the purposes which the legislature had in view, and which would make its provisions apply to transactions never contemplated by the legislative body. With these preliminary observations and keeping them in mind, we will now proceed to a determination of the case.

Section 2 of the act, which is now section 883e-2 of the Kentucky Statutes, says: "Every person, corporation, co-partnership, company or association (except those whose securities are exempt under the provisions of this act), organized or which shall hereafter be organized in this Commonwealth, whether incorporated or unincorporated, which shall either himself, themselves or itself, or by or through others, sell or negotiate for the sale of any contract, stock, bonds or other securities issued by him, them or it, within the Commonwealth of Kentucky, shall be known for the purposes of this act as a domestic investment company. Every such person, corporation, co-partnership, or association a resident of or organized in any other state, territory or government shall be known for the purpose of this act as a foreign investment company."

It will be noticed that the character of transactions at which the statute is aimed is therein set forth, and the persons negotiating or dealing in them are denominated investment companies, either domestic or foreign, but both, if engaged in the business covered by the act, are amenable to its terms. The transactions to which the statute is made applicable are the selling or negotiating for the sale "of any contract, stock, bonds or other securities issued by him, them or it" (the investment company). It is the contention of plaintiff that the word "contract," as used in the statute, viewed from the standpoint of its connection, has only a restricted

meaning and has reference only to security contracts, which latter it is argued were the only class of contracts that the statute attempted to regulate, and in which the company or individual dealt, and to procure which the purchaser invested his money or property.

On the other hand defendant, through his counsel, argues that the word "contract" in the statute means more than what is ordinarily understood as a security investment, and that it is broad enough to cover all classes of contracts which may be an instrumentality for the perpetration of fraud and in which one may invest his money or property. After enumerating by name some of the character of investments the statute says: "or other securities issued by him." In the sections following the one quoted the transactions covered by the statute are referred to as "securities" or as "other securities," and it is made perfectly plain to our minds from a consideration of the whole statute that the character of transactions that the legislature had in mind and to which it made its terms applicable are what is ordinarily understood by the term "security contract" or "securities," and that it never contemplated lodging the power or jurisdiction in the hands of the administrator of the statute to supervise or in any wise regulate all, or any, ordinary commercial contracts between members of society. No such universal guardianship was ever intended (if indeed such a sweeping regulation would be constitutional), howsoever much it might be beneficial in some instances. It was this view of the statute that a majority of the members of the court entertained when the motion to dissolve the temporary injunction was overruled. That opinion, however, is not binding on us on an appeal of the case upon its merits, as we have held in a number of cases, though it may be looked to for its persuasive effect.

"Securities" are defined in 35 Cyc. 1283, as "written assurances for the return or payment of money; evidences of indebtedness. The word is widely used as a synonym of investment." Other authorities give a similar definition to the term, and it necessarily means the investment of funds in a designated portion of the assets or capital of a concern with the view that the latter by using, and operating with, the investment will earn a profit for the investor. In other words, it carries with it the idea that the investor will earn his profit through

the efforts of others than his own. It thus includes bonds, stock certificates, shareholder certificates, and other similar investments, but its definition does not include interest income from the lending of money, or the profits which one might make by his own efforts as the result of any ordinary commercial contract which he might enter into.

Supporting the contention of the defendant, his counsel refers us to the statutes of some of the other states upon the subject and to the cases of Standard Home v. Davis, 217 Fed. Rep. 904; City of Tyler v. St. L., etc., R. Co., 99 Texas 491, and State v. Gopher, T. & R. Co., 146 Minn. 52. Many questions are discussed in the Davis case which have no relevancy or pertinency to the question involved. The court had before it the Blue Sky Law of Arkansas and the transaction there involved concerned a specific investment which was expressly mentioned in the statute and it came clearly within a security investment, as above defined. The same is true as to the other two cases relied on and an examination of all of them will show that they shed but little, if any, light upon the question here under consideration.

Some of the statutes of other states, to which we are referred, expressly include within the provisions of the act "membership contracts," and in the South Dakota statute one of the transactions covered is expressly mentioned as "service contracts," so that opinions from those states would not be controlling in this case. In the Minnesota case relied on the agency for the administration of the law was styled "State's Securities Commission," and the indictment under consideration charged the defendant with selling securities contrary to the provisions of the statute, and the transaction involved consisted in an agreement whereby in consideration of $50.00 paid the purchaser of the right became entitled to a percentage of the business done for a period of twenty years, and the statute was expressly aimed at certain named transactions and "investment contracts or other securities."

Counsel for plaintiff cite and rely on the case of Creasey Corporation v. Enz Bros. Co., an opinion by the Wisconsin Supreme Court, and reported in 187 N. W. Rep. 666, in which the identical contract involved here was under consideration and the question was whether it came within the purview of the Blue Sky Law of that

state. While the statute there under consideration did not expressly contain the word "contract," it defined the securities intended to be regulated by the act as including "any bonds, stocks, notes or other obligations or evidences of indebtedness, or of title which constitutes evidences of, or is secured by, title to, interest in or lien upon any or all of the property or profits of such company." The word "obligations" as used in that statute is quite as broad and comprehensive as the word "contract" as used in our statute; yet the court held in that opinion that the contract there involved which, as we have seen, is the same as the one now before us, was not included in the terms of the statute, and in doing so said: "It may be argued that in one sense every contract is a security, because it guarantees to the parties thereto something of value. But, as before stated, the Blue Sky Law was enacted for the purpose of protecting against the sale of worthless money obligations, and not against entering into other contracts where service is to be rendered, as here, or other obligations are incurred that do not partake of the sale of securities, or of a sharing in either the capital or profits of a company."

We therefore conclude, as the cases referred to hold, that the primary purpose of Blue Sky Laws is to protect investors from investments in *securities* whereby a profit is promised and expected without any active efforts on the part of the investor, and which scheme contemplates that the company or individual who receives the investment will employ it himself or itself in such a manner as to reap a profit to the holder of the sold security; and that it was not intended to apply to contracts containing mutual obligations, such as are daily entered into in commercial life, and from which a profit can only be reaped by the uses which the investor alone makes of them. In one sense of the word every contract is an investment by the parties thereto. If A buys an automobile from B the former invests his money and procures the automobile, while the latter invests his automobile and procures in lieu thereof the purchase price. The same is true with reference to a contract involving the exchange of commodities, and the same may be truthfully said with reference to all sorts and kinds of contracts. Surely, it can not be said that the legislature intended to vest the banking commissioner with supervision of all sorts of contracts though involving the idea of investment, as we have seen, and with power to withdraw the

right to make contracts if, perchance, he concluded that one or the other party had been defrauded or that the particular class of contracts possessed the potentialities for the commission of fraud.

It might be conceded for the purposes of this case that the character of contract involved should be regulated and, no doubt, such regulation would be permitted under the exercise of the police power, but until the legislature employs terms sufficiently comprehensive to include it, as did the legislature of South Dakota and some of the other states, we can not see our way clear to assume legislative functions and under the guise of construction read into the statute something that is not there. We do not regard the question of good or bad faith of defendant as involved in the case or in any wise material, and we have not been influenced in the slightest by the discussion in briefs of that phase of the case.

Wherefore, the judgment is affirmed.

Whole court sitting.