**Lucia M. Hacker, Appellee, v. J. R. Goldberg and The U. S. Bond & Mortgage Company, Appellants.**

**Gen. No. 35,254.**

74

Opinion filed October 19, 1931.

SISSMAN & SISSMAN, for appellants.

COONEY & VERHOEVEN, for appellee; JOHN A. VERHOEVEN, of counsel.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against the defendants to recover $500 which she claimed to have paid defendants for a membership in the Wandawega Country Club, which was then being organized in the State of Wisconsin. Apparently plaintiff's claim was based under the provisions of section 37 of the Illinois Securities Law (par. 290, chap. 32, Cahill's 1931 Stats.), it being plaintiff's contention that the necessary documents provided for in that act had not been filed with the secretary of state of Illinois, prior to the time she paid the money, her contention being that the certificate given to her when she made her first payment of $100 was a "security" within the meaning of the Illinois Securities Law.

The defendants admitted the receipt of the $500 from the plaintiff but took the position that they received it in payment of membership in the Wandawega Country Club which was then being organized in Wis-

consin; that afterwards the club was incorporated under the laws of Wisconsin and that plaintiff was a member of the club. Defendants' further position is that the certificate issued to plaintiff when she made her first payment was not a security within the meaning of the security law. The case was tried before the court without a jury and there was a finding and judgment in plaintiff's favor and the defendants appeal.

The evidence tended to show that in December, 1929, plaintiff, who lived in Chicago, learned of the formation of the Wandawega Club by the defendants, and went to their office in Chicago and talked the matter over with the defendant, Goldberg, as a result of which she made and signed a written application dated December 31, 1929, to become a member in the Wandawega Country Club which was then being organized and for which she agreed to pay $500. $100 was paid in cash and she executed her instalment note for $400, payable in 20 instalments of $20 each. The evidence further shows that afterwards she made a number of monthly payments and in June or July, went to the club which was located near Elkhorn, Wisconsin, on two different occasions; that shortly after she returned after the last visit, she paid the balance of the $500 on July 10, 1930. The application signed by the plaintiff expressly stated that each member of the club when it should be formed "has a proportionate, and equal undivided interest in all of the property and assets of the Club be they real, personal or mixed." Plaintiff testified that after she had made the last payment she called on the defendants and demanded the return of her money which was refused. The evidence further shows that it was agreed that when the country club was incorporated and plaintiff elected a member, she would be given a membership certificate and that plaintiff never received a certificate.

The defendants, in their amended affidavit of merits which was filed on the day of the trial, March 13, 1931, averred that "certificates of membership are in the process of preparation, and will be issued to the plaintiff and to other members as soon as they are prepared, which said membership certificates will set out fully all the rights and privileges of the various members of the Wandawega Country Club." The defendants among other things, offered a certified copy of the charter of the country club but on objection it was excluded. This was error. Plaintiff had alleged that there was no country club organized and this was denied by the defendants. The defendants also said they would prove that plaintiff had regularly been elected and was a member of the country club but apparently, in view of the turn the case took as to whether the certificate given to plaintiff was a security within the meaning of the Blue Sky Law, no proof on that question was made. The certified copy of the country club's charter which was excluded is in the record. Article 3 is as follows: "NATURE OF ORGANIZATION. This corporation shall be a non-stock corporation. No dividends or pecuniary profits shall be declared or paid to the members thereof." It is obvious that what plaintiff purchased was not a security within the meaning of the Illinois statute; that law is entitled "An Act relating to the sale or other disposition of securities and providing penalties for the violation thereof." And section 2 of that Act, Cahill's St. ch. 32, ¶ 255, provides "The word 'securities' shall mean and include stock, treasury stock, bonds, debentures, . . . participation certificates, certificates of shares or interest," etc. We think the act intended to prohibit the sale unless its provisions were complied with, of securities from which income or profit was expected to be derived (*Prohaska v. Hemmer-Miller Development Co.*, 256 Ill. App. 331),

and not for an interest in a club from which no financial profit or income could be derived under the charter. Plaintiff has no right of action under the Illinois Securities Law but if she parted with her $500 and received nothing for it, an action would lie as for money had and received. *Stewart v. Brady,* 300 Ill. 425.

Plaintiff's position was that she received nothing for her money but a copy of the application made by her for membership in the club. There is evidence in the record to the effect that plaintiff was to receive two lots of ground belonging to the golf club which was being organized. And there was evidence that two lots were offered to plaintiff which she refused to accept. Whether these lots or any property was owned by the club nowhere appears.

The defendants' position was that plaintiff received what she paid the $500 for except that the certificate of membership had not been issued to her. Why the certificates of membership were not issued long before, does not appear. The club was organized September 30, 1930, but the certificate of membership had not been issued at the time of the trial, March 13, 1931. Whether the issuance of these membership certificates is of any moment we do not decide.

In view of the way in which the case was tried, and the evidence not being fully developed, and for the reasons stated, the judgment of the municipal court of Chicago is reversed and the cause remanded.

*Reversed and remanded.*

McSurely and Matchett, JJ., concur.