[S. F. No. 20664.   In Bank.   May 18, 1961.]

SILVER HILLS COUNTRY CLUB et al., Respondents, v. JOHN G. SOBIESKI, as Commissioner of Corporations, Appellant.

Stanley Mosk, Attorney General, Harold B. Haas and Victor Griffith, Deputy Attorneys General, for Appellant.

Broun & King and LeRoy A. Broun for Respondents.

TRAYNOR, J.—Petitioners are partners in a venture to organize the Silver Hills Country Club in Marin County and to conduct it as a business for profit. In June 1959 they contracted to purchase for $75,000 a 22-acre ranch including a 10-room house, two smaller houses, a stable, and other improvements. The contract of sale provided for a down payment of $400, a payment of $50,000 18 months from the date of the contract, and the payment of $1,000 a month to begin three years from the date of the contract. At the time of the proceeding below petitioners had paid only the $400 down payment.

After making the down payment and taking possession of the property petitioners sowed grass, installed a swimming pool, and remodeled the main building adding showers, a steamroom, and health and exercise equipment. They plan to make further improvements including additional swimming pools and a nine-hole golf course.

They have financed these improvements in part by the sale of memberships in the country club. To date they have sold 110 "charter memberships" for $150 each. They have also given out 60 "honorary charter memberships." They plan to sell a total of 200 "charter memberships" for $150 each, thereby raising $30,000; 300 memberships for $200 each, thereby raising $60,000, and 500 memberships for $250 each,

thereby raising $75,000. The price of a membership is to increase as additional facilities are added to the club. Golf memberships are to be offered at a later time for an additional $200 each. Apart from the price of a membership a member must also pay monthly dues, the amount of which is fixed at the time he purchases his membership.

Both the membership application and the bylaws provide that a member has no rights in the income or assets of the club. A member and his immediate family, however, have the right to use all of the club facilities except the golf course, for which special membership is required. A member cannot be expelled except for misbehavior or failure to pay the monthly dues. The membership is transferable, but only to persons approved by the board of directors of the club.

The Commissioner of Corporations has concluded that a membership interest in the country club is a security and that the sale thereof without a permit is prohibited by the Corporate Securities Act. (Corp. Code, § 25500.)[1] On September 4, 1959, he issued a "Desist and Refrain Order" directing petitioners to stop the sale of memberships. After a hearing he denied petitioners' motion to vacate the order. Petitioners then sought a writ of mandate in the superior court to compel the commissioner to vacate his order. The court granted the writ, and the commissioner appeals.

Section 25008 of the Corporations Code defines a security as follows:

" 'Security' includes all of the following:

"(a) Any stock, including treasury stock; any certificate of interest or participation; any certificate of interest in a profit-sharing agreement; any certificate of interest in an oil, gas, or mining title or lease; any transferable share, investment contract, or beneficial interest in title to property, profits, or earnings.

"(b) Any bond; any debenture; any collateral trust certificate; any note; any evidence of indebtedness, whether interest-bearing or not.

"(c) Any guarantee of a security.

"(d) Any certificate of deposit for a security."

The commissioner contends not only that a membership in the club is a beneficial interest in the title to property and

---

[1]"No company shall sell any security of its own issue . . . or offer for sale, negotiate for the sale of, or take subscriptions for any such security, until it has first applied for and secured from the commissioner a permit authorizing it so to do."

therefore a security within the literal language of subdivision (a) of section 25008 but also that the purchase of such an interest is attended by the very risks the corporate securities act was designed to minimize. Petitioners contend that a membership is not a beneficial interest in property, on the ground that a member of the club has no rights in either the assets or the income of the club, and that in any event a membership is not within the scope of the act on the ground that it is purchased, not for investment, but for the use and enjoyment of the purchaser.

Section 25008 defines a security broadly to protect the public against spurious schemes, however ingeniously devised, to attract risk capital. (*People* v. *Syde*, 37 Cal.2d 765, 768 [235 P.2d 601].) To effectuate this purpose the courts look through form to substance. (*Domestic & Foreign Petr. Co., Ltd.* v. *Long*, 4 Cal.2d 547, 555 [51 P.2d 73]; *Oil Lease Service, Inc.* v. *Stephenson*, 162 Cal.App.2d 100, 107-108 [327 P.2d 628]; see *Securities & Exchange Com.* v. *Howey (W. J.) Co.*, 328 U.S. 293, 298 [66 S.Ct. 1100, 90 L.Ed. 1244, 163 A.L.R. 1043]; 14 Fletcher, Cyclopedia of Corporations, pp. 179-180; Loss, Securities Regulations, pp. 299-329; Dahlquist, *Regulation and Civil Liability Under the California Corporate Securities Act*, 33 Cal.L.Rev. 343, 357; 163 A.L.R. 1052-1053.) Thus, the sale of fur-bearing animals and the entrusting of those animals to the seller for care and disposition of the fur (*Hollywood State Bank* v. *Wilde*, 70 Cal.App.2d 103, 107 [160 P.2d 846]), the selling of "services" in procuring United States oil leases (*Oil Lease Service, Inc.* v. *Stephenson, supra*, 162 Cal.App.2d 100, 108-113), and the sale of orange groves coupled with a contract to have the vendor service the land (*Securities & Exchange Comn.* v. *Howey (W. J.) Co., supra*, 328 U.S. 293, 298) were all held to be sales of securities.

The purchaser of a membership in the present case has a contractual right to use the club facilities that cannot be revoked except for his own misbehavior or failure to pay dues. Such an irrevocable right qualifies as a beneficial interest in title to property within the literal language of subsection (a) of section 25008. (See *Yuba River Power Co.* v. *Nevada Irr. Dist.*, 207 Cal. 521, 523, 527 [279 P. 128]; cf. Civ. Code, § 654; Gov. Code, § 54030.) The crucial question nevertheless remains whether the sale of such a membership comes within the regulatory purpose of the Corporate Securities Act.

It has been held that a contract providing only for the sale of services is not within the scope and purpose of the

act. (*People* v. *Syde, supra,* 37 Cal.2d 765, 769.) In other states it has also been held that the sale of memberships in an organization in which members have no interest in the assets or profits is not a sale of securities. (*Hacker* v. *Goldberg,* 263 Ill. App. 73, 76; *Creasy Corp.* v. *Enz Bros. Co.,* 177 Wis. 49 [187 N.W. 666, 667]; *Lewis* v. *Creasey Corp.,* 198 Ky. 409 [248 S.W. 1046, 1049].) ▉ In contrast "as a general rule, the sale of 'securities' that is condemned by the courts involves an attempt by an issuer to raise funds for a business venture or enterprise; an indiscriminate offering to the public at large where the persons solicited are selected at random; a passive position on the part of the investor; and the conduct of the enterprise by the issuer with other people's money." (Dahlquist, *Regulation and Civil Liability Under the California Securities Act, supra,* 33 Cal.L.Rev. 343, 360.)

We have here nothing like the ordinary sale of a right to use existing facilities. Petitioners are soliciting the risk capital with which to develop a business for profit. The purchaser's risk is not lessened merely because the interest he purchases is labelled a membership. Only because he risks his capital along with other purchasers can there be any chance that the benefits of club membership will materialize.

▉ It bears noting that the act extends even to transactions where capital is placed without expectation of any material benefits. Thus from its exemption of securities of certain nonprofit companies[2] the act specifically excepts "notes, bonds, debentures, or other evidence of indebtedness *whether interest-bearing or not.*" (Italics added.) ▉ Since the act does not make profit to the supplier of capital the test of what is a security, it seems all the more clear that its objective is to afford those who risk their capital at least a fair chance of realizing their objectives in legitimate ventures whether or not they expect a return on their capital in one form or another. ▉ Hence the act is as clearly applicable to the sale of promotional memberships in the present case as it would be had the purchasers expected their return

---

[2] "Except as otherwise expressly provided in this division, the Corporate Securities Law does not apply to any of the following classes of securities:

"(a) Any security (except notes, bonds, debentures, or other evidences of indebtedness, whether interest-bearing or not) issued by a company organized under the laws of this State exclusively for educational, benevolent, fraternal, charitable, or reformatory purposes and not for pecuniary profit, no part of the earnings of which inures to the benefit of any private shareholder or individual." (Corp. Code, § 25102.)

in some such familiar form as dividends. Properly so, for otherwise it could too easily be vitiated by inventive substitutes for conventional means of raising risk capital.

The order of the trial court granting petitioners a writ of mandate is reversed.

Gibson, C. J., Peters, J., White, J., and Dooling, J., concurred.

McCOMB, J.—I dissent. I would affirm the judgment of the Superior Court of the City and County of San Francisco (Orla St. Clair, J.), for the reasons expressed by Mr. Justice Shoemaker in the opinion prepared by him for the District Court of Appeal and concurred in by Mr. Presiding Justice Kaufman and Mr. Justice Draper, (Cal.App.) 9 Cal.Rptr. 694.

Schauer, J., concurred.

Respondents' petition for a rehearing was denied June 14, 1961. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.