**BEEFY TRAIL, INC., a Florida corporation, Plaintiff,**

v.

**BEEFY KING INTERNATIONAL, INC., et al., Defendants.**

**Civ. No. 70-246.**

United States District Court, M. D. Florida, Orlando Division.

July 25, 1972.

Robert Dyer, Orlando, Fla., for plaintiff.

Lloyd Herold, North Palm Beach, Fla., for Beefy King.

William S. Blalock, Orlando, Fla., for Veigle.

## ORDER

GEORGE C. YOUNG, District Judge.

This is a complaint for alleged unlawful securities transactions under the Securities Acts of 1933 and 1934 and for alleged anti-trust violations under the Clayton and Sherman Acts. Plaintiff, Beefy Trail, Inc. (hereinafter "Beefy Trail"), a Florida corporation, alleges in the first count of the complaint that on June 13, 1968, Hugh McCarroll and Beefy King International, Inc., a Florida corporation (hereinafter "Beefy King, Florida"), entered into an option agreement for the purchase of the Beefy King restaurant and franchise located at 4868 South Orange Blossom Trail, Orlando, Florida, then owned and operated by Beefy King, Florida. This option was then assigned by Hugh McCarroll to plaintiff, Beefy Trail, who subsequently chose to exercise the option and purchase the restaurant and franchise for $50,000.00. Subsequently, defendant Francis Veigle, as principal and controlling stockholder of Beefy King Florida, decided that the corporation should "go public". In accordance with such decision Beefy King International, Inc., a Delaware corporation (hereinafter "Beefy King, Delaware") was formed, and which then purchased the stock of Beefy King, Florida and thereafter has completely dominated its corporate affairs. In exchange for his controlling interest in Beefy King, Florida, Francis Veigle received 65% of the stock of Beefy King, Delaware. Plaintiff contends that the sale to it of the franchise and restaurant on Orange Blossom Trail by the defendants Beefy King, Florida and Francis Veigle constitutes a sale of an investment contract and therefore a security under Title 15 U.S.C. § 77b(1) and § 78c(10). It is therefore alleged that between April and December 1968 defendant Beefy King, Florida sold securities through instrumentalities of interstate commerce, i. e. the sending of promotion brochures and sale of Beefy King franchises through the mails, and that in connection with such sales defendants made untrue statements of material facts and omitted from the prospectus-type informational brochure other material facts in violation of § 77q and § 78j(b), Title 15 U.S.C.[1] The material misstatements raised by plaintiff allegedly contained in defendants' informational brochure are set out in the complaint.

The second count of the complaint based on § 3 of the Clayton Act, Title 15 U.S.C. § 14,[2] and § 1 of the Sherman

---

1. § 77q—*Fraudulent interstate transactions.*

    (a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

    (1) to employ any device, scheme or artifice to defraud, or

    (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

    (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

    § 78j(b)

    It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

    . . . . .

    (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

2. "§ 14. *Sale, etc., on agreement not to use goods of competitor.*

    It shall be unlawful for any person engaged in commerce, in the course of such

Act Title 15 U.S.C. § 1, alleges that by the option obtained by Hugh McCarroll from Beefy King, Florida, on June 13, 1968, it was provided that of the original purchase price, $24,600.00 was for the purchase of restaurant equipment, the purchase of which was a condition to the granting of the franchise. Furthermore, that plaintiff to whom Hugh McCarroll had previously assigned his rights, paid a premium price for what was used equipment, and therefore, plaintiff paid a price in excess of that which it would have paid for comparable equipment in a free and competitive market. Plaintiff contends that the requirement that it buy the equipment provided by Beefy King, Florida, as a condition to the obtaining of the franchise, constitutes an illegal tying arrangement in violation of federal anti-trust law. Siegel v. Chicken Delight, 448 F.2d 43 (9th Cir. 1971).

After exchanges of motions this cause came on for hearing before this Court on the motions of the corporate defendants and of defendant, Francis Veigle, for summary judgment. Defendant Veigle raises three grounds upon which summary judgment should be granted; first, that Count I makes no specific allegations against Francis Veigle; second, that as to Count I, the statute of limitation has run, citing Vanderbloom v. Sexton, 422 F.2d 1233 (8th Cir. 1970); and, thirdly, that the claim for recision should be dismissed as plaintiff has not necessarily offered to remit his portion of the bargain, the restaurant.

The corporate defendants, Beefy King of Florida and Delaware, in support of their motion for summary judgment, contend as to Count I, the alleged securi-

ties count, that the sale of a franchise under the circumstances of this case was not the sale of an investment contract and therefore a security under the provisions of the Securities Acts of 1933 and 1934. The corporations argue that what was involved in this instance was the sale of a going concern to a knowledgeable businessman who intended to actively participate in the daily operations and not a "passive investor" satisfied with realizing potential profits solely from the efforts of another. Securities Exchange Commission v. W. J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). The corporate defendants also raise the issue of whether plaintiff's claim under the Securities Act is barred by the statute of limitations. Vanderbloom, supra. Finally, as to Count I, defendants contend that plaintiff's claim under the Securities Act of 1933 is barred by the doctrine of res judicata and/or estoppel by judgment. It is argued that because plaintiff, in his prior state court suit, did not raise his securities violation claim under the 1933 Act, which claim arises out of the same transaction sued upon in state court, therefore, he is prohibited from proceeding on such claim now before this Court.

As to Count II, it is argued that no anti-trust violation occurred because in actuality the transaction amounted to only the sale of a going quick-service food business, which sale by its very nature required the inclusion and transfer of the equipment then in place and in use, and that such circumstances do not make out a prohibited tying agreement.

As to both counts of the indictment, the corporate defendants move that de-

---

commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the con-

dition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

fendants Beefy King, Delaware, and its successor corporation, I.E.A. Corporation (hereinafter "I.E.A.") should be dropped as improper parties under Rule 21, Federal Rules of Civil Procedure. It is argued that neither corporation were parties to or privy to the negotiations or purchase of the franchise by Hugh Mc-Carroll on June 13, 1968. In combination with this argument defendants contend that an action against either Beefy King, Delaware, or I.E.A., or both, is forbidden by § 608.47 Florida Statutes, F.S.A. It is their contention that § 608.47, Florida Statutes, F.S.A. forbids any action against the stockholders of a corporation for the corporation's debts until after execution on a judgment therefor has been returned unsatisfied in whole or in part, and that because Beefy King, Delaware, is the principal stockholder of Beefy King, Florida, the corporation participating in the franchise sale agreement with McCarroll, no action may be brought against it or its successor, I.E.A., until after it first appears that a judgment has been obtained against Beefy King, Florida, and execution on such judgment has been returned unexecuted in whole or in part.

■ The initial issue to be resolved is whether the defendant corporations should be dropped as improper parties.

It is clear from F.S. § 608.24 F.S.A.[3] that a merger would not terminate or alter any liability of Beefy King, Florida, that may have arisen as a result of the sale of franchises. Furthermore, F.S. § 608.22 F.S.A.[4] has the effect of providing that any liability which might be found to belong to Beefy King as a result of the transaction sued upon in this suit would have attached to the consolidated or successor corporation. It is found that F.S. § 608.47 F.S.A. was not intended to cover the present situation where two corporations in fact are consolidated by one acquiring the stock of the other.

■ The next issue for resolution is whether the securities count is barred by the statute of limitation. Defendants contend that plaintiff's claim under § 17 of the 1933 Act and § 10(b) of the 1934 Act are barred by the statute of limitation. It appears from the record that the agreement was signed on November 5, 1968 and this suit was instituted December 1, 1970. Defendants argue that the aforementioned sections of the Securities Acts of 1933 and 1934 do not provide for a specific statute of limitations, therefore, under the rationale of Vanderbloom v. Sexton, 422 F.2d 1233 (8th Cir. 1970), the state Blue Sky law statute of limitations should be controlling. In Florida § 517.301(1) Florida Statutes, F.S.A. is similar to § 10(b) of the 1934 Act. The statute of limitations applicable to § 517.301(1) for the instituting of private actions for fraud are provided for by F.S. § 517.21 F.S.A., which sets the limitation at two (2) years from date of sale. Under these circumstances plaintiff would have untimely filed the securities claim. However, this Court finds that the applicable law in the Fifth Circuit is set forth in Azalea Meats, Inc. v. Muscat, 386 F.2d 5 (5th Cir. 1967) requiring this Court to look to the longer state statute of limitations in actions for fraud. In Florida F.S. § 95.11(5)(d) F.S.A. provides in actions for fraud for a three (3) year statute of limitations. The Fifth Circuit recently had an opportunity to reconsider the *Azalea Meats* case and the more recent *Vanderbloom* decision and reaffirmed its

3. "The liability of corporations, . . ., shall not in any way be lessened or impaired by the consolidation or merger of two or more corporations under the provisions of this chapter."

4. " . . . All rights of creditors and all liens upon the property of either of the constituent corporations shall be preserved unimpaired, limited in lien to the property affected by such liens at the time of the consolidation or merger, and all debts, contracts, liabilities, obligations and duties of the respective constituent corporations shall thenceforth attach to the consolidated or merged corporation, and may be enforced against it to the extent as if they had been incurred or controlled by it."

*Azalea Meats* ruling. Aboussie v. Aboussie, 441 F.2d 150 (5th Cir. 1971). Therefore, this Court finds that the three (3) year statute of limitations of F.S. § 95.11(5) F.S.A. should be applied, and that suit having been filed within three (3) years of entering into the franchise agreement, this portion of the motion for summary judgment is without merit.

The next issue for resolution is whether the Beefy King franchise and restaurant sold to Hugh McCarroll and later assigned to plaintiff, Beefy Trail, is an investment contract as that term is used in Title 15, U.S.C. § 77b(1) and 78c(10), and therefore a "security" within the provisions of the Securities Acts of 1933 and 1934. For Beefy King, Florida to have been required to have complied with the anti-fraud provisions of the Securities Act of 1933 and 1934, at the time of the sale of the franchise and restaurant, the threshold determination must first be made that the transaction constituted the sale of a security.

Counsel for all parties have submitted numerous cases which explore the spectrum of circumstances under which courts have considered this question and theories developed in those cases.[5] However, such analyses and theories are of benefit only in analyzing the particular facts of each individual case.

This Court has previously stated that:

"The logical approach to the problem is an examination of what a franchisee "buys" when he enters into a franchise agreement. Whether the purchase constitutes the purchase of an investment contract within the meaning of the Securities Act would in each case depend upon the facts of the case. A so-called "franchise" could or it could not constitute an investment contract, . . . ."

Beefy Trail, Inc. v. Beefy King International et al., 70–246–Orl–Civ., M.D. Fla., April 23, 1971, ruling on defendants' motion to dismiss for failure to state a claim.

In that order this Court recognized that the established test from S.E.C. v. W. J. Howey Co., supra, 328 U.S. at 293, 66 S.Ct. at 1103:

" . . . an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party . . . "

was intended to present a "flexible" standard by which to measure each situation.

It appears, after consideration of the record in this case, that no genuine issue of material fact remains concerning the sale, purchase and assignment of the restaurant and franchise to Beefy Trail through Hugh McCarroll and summary judgment may be granted as a matter of law. City of Crystal City v. Del Monte, 5th Cir., 1972, 463 F.2d 976. A thorough reading of the deposition of Hugh McCarroll, owner of seventy-five percent (75%) of the outstanding stock of Beefy Trail, and who is a director and president of that corporation, reveals that summary judgment should be granted under the circumstances of this case.

Hugh McCarroll states in his deposition that he had an extensive background as a businessman, having owned

5. S.E.C. v. W. J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), Mr. Steak, Inc. v. River City Steak, Inc., 324 F.Supp. 640 (D.Colo.1970), State of Hawaii by Commissioner of Securities v. Hawaii Market Center, Inc., 485 P.2d 105 (Hawaii 1971), Abercrombie v. Lum's Inc., Civil Action No. 295–70–A, (E.Va. April 12, 1971); Opinion of the Attorney General of Georgia to the Secretary of State, No. C–505622, November 11, 1969; and the 1967 California Attorney General Opinion, 490 Attorney General 124 (1967), which discusses various theories of liability, i. e. the "risk capital" or integrated "risk", see Silver Hills Country Club v. Sobieski, 55 Cal.2d 811, 13 Cal.Rptr. 186, 361 P.2d 906 (1961), State v. Gopher Tire & Rubber Co., 146 Minn. 52, 177 N.W. 937 (1928).

and managed a Ben Franklin store, in Deadwood, South Dakota, for twenty-one years; that at the time he approached defendant Veigle concerning a franchise he had been retired for several years, during which time he had held an interest in a construction business in South Dakota. His deposition shows that, prior to actually purchasing the franchise and restaurant, he and his attorney (the same attorney who represents plaintiff in the present suit) spent a considerable period of time negotiating with Beefy King, Florida and Francis Veigle over the terms and conditions of the ultimate purchase of a restaurant and franchise. In fact, it appears that some of the documents involved in the disputed transaction which the plaintiff finds objectionable were prepared by McCarroll's attorney as a result of defendant's inaction. Prior to purchasing the restaurant and franchise, McCarroll acted as a business consultant to Beefy King, Florida and in fact worked on revising an operating manual for prospective franchisees. He reported to work daily during that period at defendant's offices in Orlando. Further, McCarroll and Veigle discussed a number of possible sites which might be sold to McCarroll as a franchise operation prior to the time of the purchase of the franchise on Orange Blossom Trail.

Although, in his deposition, McCarroll states that he attached no great significance to the fact that the restaurant and franchise he purchased was built and he would only have to step in and operate it, he nevertheless said that he "wasn't interested in speculation". He had previously helped other franchisees set up their own operations and he felt he could do so without too much trouble. He was primarily interested in buying a business, setting it up and operating it.

The deposition reveals that he was a businessman, interested in operating his own business, who had extensive prior business experience which he contemplated bringing to the beef sandwich business, and that he actively participated in the daily operation of the franchise, overseeing the restaurant's regular operations, its advertising, kept the books and records, and regularly made business decisions affecting the restaurant.

■ The ruling of this Court is in no way intended to foreclose any state court action plaintiff may have based on fraud, misrepresentation or breach of contract. This Court's determination is narrowly limited to the conclusion of law that the acts complained of by plaintiff did not constitute the sale of an investment contract as that term has been construed in the case law. This is not the situation where the "investors" overriding concern at the time of purchase is the recognition of financial gain attributable to the efforts of others unknown to and outside the control of the "investor" in a common enterprise.[6] It is clear from his deposition that McCarroll was self reliant and anticipated that the economic success of the restaurant would be a result of his abilities and experience and not those of unknown others.

The second major portion of defendants' motion for summary judgment concerns Count II of the amended complaint, the anti-trust count brought under the Clayton and Sherman Acts. As was previously outlined, plaintiff essentially contends that the contractual requirement imposed as a condition of sale by defendant, Beefy King, Florida, that the equipment be purchased from the defendant as a package with the franchise and restaurant, constituted an illegal tying arrangement in violation of Title 15 U.S.C. § 13.

The undisputed material facts relevant to Count II are that at the time that McCarroll exercised his option in September, 1968, the Beefy King restau-

6. S.E.C. v. W. J. Howey, supra; S.E.C. v. C. M. Joiner Leasing Corp., 320 U.S. 344, 64 S.Ct. 120, 88 L.Ed. 88 (1943); Continental Marketing Corp. v. S.E.C., 387 F.2d 466 (10th Cir. 1967); S.E.C. v. Bailey, 41 F.Supp. 647 (S.D.Fla.1941).

rant and franchise on Orange Blossom Trail was a "company restaurant" which had been established and operating for approximately six months; that the equipment concerned was then in place in that restaurant; and that the total payment to be made by McCarroll was partially in consideration for the purchase of the equipment. It further appears that other such "company restaurants" may have also been set up by Beefy King, Florida and operated for some time before being sold to franchisees.

It is plaintiff's position that such facts make out an illegal tying agreement, requiring a franchisee to purchase necessary operating equipment from the franchisor as a condition of obtaining the franchise itself. Plaintiff places heavy reliance on the case of Siegel v. Chicken Delight, Inc., 448 F.2d 43 (9th Cir. 1971). The factual background of *Chicken Delight*, as set out in the body of the opinion, is as follows:

"Over its eighteen years existence, Chicken Delight has licensed several hundred franchisees to operate home delivery and pick-up food stores. It charged its franchisees no franchise fees or royalties. Instead, in exchange for the license granting the franchisees the right to assume its identity and adopt its business methods and to prepare and market certain food products under its trade-mark, Chicken Delight required its franchisees to purchase a specified number of cookers and fryers and to purchase certain packaging supplies and mixes exclusively from Chicken Delight. The prices fixed for these purchases were higher than, and included a percentage mark-up which exceeded that of, comparable products sold by competing suppliers."

■ A "tying arrangement" is an agreement by parties to sell one product ("the tying product") but only on condition that the buyer also purchase a different product ("the tied product"). Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953); Shell Oil Company v. F.T.C., 360 F.2d 470 (5th Cir. 1966).

The determinative question of law to be resolved is whether a franchisor may require prospective franchisees to purchase restaurant equipment only from him, rather than on the free and open market or whether such arrangement could constitute a tying arrangement, when the franchisor has previously established an operating franchise doing business with the public and the equipment to be purchased is then fixtures in the franchise/restaurant. Stated differently, is the essential nature of the *Chicken Delight* franchise arrangement so substantially altered by having the equipment to be purchased then in use in a functioning restaurant at the time of sale, rather than requiring the use of such equipment in a proposed restaurant yet to be built. It is further recognized that it was also found in *Chicken Delight* that the franchisee was required to both purchase printed packaging supplies and mixes exclusively from Chicken Delight. However, those differences are found to be immaterial and not to change the basic transaction.

■ Considering in isolation only the circumstances of the transaction between McCarroll and Beefy King, Florida, this Court concludes as a matter of law that such transaction would not constitute a tying arrangement in violation of Title 15, U.S.C. § 1 and §§ 13 and 14. Much in the same way it does not constitute a tying arrangement for an auto dealer to require purchasers of cars to also buy the engines from him; similarly, it is not illegal for Beefy King, in the sale of an operating restaurant, to require the purchaser to buy the equipment found in the restaurant. This Court recognizes that a different situation might exist in the present case if the franchisor required, as occurred in *Chicken Delight*, the potential franchisee of a future restaurant buy his kitchen equipment only through the franchisor.

Therefore, it is found that if this transaction is determined to be an isolated or essentially an isolated sale of a franchise restaurant, defendants would be entitled to summary judgment as a matter of law as to the issue of violation of Title 15, U.S.C. § 1 and § 13.

■ However, it is contended that Beefy King, Florida and Francis Veigle established or caused to be established a number of other "company restaurant" franchises which were in operation prior to the time of ultimate sale to a franchisee. Although an isolated sale of equipment located in an established restaurant does not constitute a tying arrangement, a different situation might exist under the circumstances where the franchisor by an intentional course of conduct seeks to circumvent the antitrust laws concerning tying arrangements by requiring a franchisee to purchase a restaurant and its equipment previously established with the conscious purpose of avoiding the rationale of *Chicken Delight*. The latter situation having been sufficiently alleged by the pleadings in this case, it is found that a genuine issue of material fact remains and that summary judgment should, therefore, not be granted. Furthermore, a jury issue is to be presented at trial as to whether the sale of this equipment, restaurant and franchise were part of an intentional course of conduct on the part of defendants, Beefy King, Florida and Frances Veigle to circumvent Title 15, U.S.C. § 1 and §§ 13 and 14, or was a good faith sale of a restaurant and its equipment occurring in the normal course of business and not associated with any purpose to evade the law; it is therefore,

Ordered that partial summary judgment is granted in favor of the defendants as to Count I of the amended complaint but the balance of the motion for summary judgment is denied as it pertains to Count II of the amended complaint.