Dorothy ASCHENBACH; Perey Bamford and Letitia Bamford, his wife; Hazel Bartelt; Janet H. Becker; Joseph Belohlavek and Milada Belohlavek, his wife; Edward Berens and Margaret Berens, his wife; Alice Bergin; John Binkley and Marie Binkley, his wife; Paul Brand and Mabel Brand, his wife; Ray Burger; Neil Butler and Anita Butler, his wife; Lura Carrithers; Ethel Cleereman; Elva Conley; Alice Day; Herman De Elsa; Euclid De Mers and Elizabeth De Mers, his wife; Myrtle De Mers; Frieda Eberle; Erwin Eckhoff; Bee Faludi; Judson Feliman; Sophie Fraser; Dorothea Froelich; Claire Geisler; Hertha Gerspach; Alvin Glienke and Ruth Glienke, his wife; Ruth Grasse; Cora Grieb; Ruby Gross; Lucille Hamm; Estelle Hoffmann; Alice Hogue; Florence Huge; Phoebe Hutchinson; George Ihlenfeld; Elmer Ingraham and Esther Ingraham, his wife; Henry Jens and Frances Jens, his wife; G. Minnie Jones; Ervin Jung and Margaret Jung, his wife; Anne Kastner; Marian Kools; William Kuhnke; Sylvia Kutik; Lloyd La Mere and Valida La Mere, his wife; Raymond Leichtle and Iris Leichtle, his wife; Bertha Leiner; Ray Leutenegger and Helen Leutenegger, his wife; Elsa Longacre; Edward Lord; Edward Love and Florence Love, his wife; Ralph Luecke; Ruth Madison; Gladys Madison; Edithe Marcks; Verna Marx; Marie May; Matthew McEvoy and Blanche McEvoy, his wife; Marjorie Mueller; Janet Miller; Frank Muller and Marie Muller, his wife; Vincent Nast and Ramona Nast, his wife; Verna Newsome; Lydia Oelke; Helen C. Olsen; Mildred Olsen; Evelyn Olson; William Pagel and Mabel Pagel, his wife; Mildred Palmer; Adeline Panzer; Stella Papke; Ruth Pieper; William Potterton; Florence Qualman; Minerva Reifschlager; Carl Reuter and Bernice Reuter, his wife; Walter Ripple; John Rittenhouse and Angela Rittenhouse, his wife; Frank Ross; Myra Rubyor; Violet Rusch; Ferdinand Schmalzer; Mary

Schneider; Harold Schneller and Blanche Schneller, his wife; Gladys Schroeder; Dorothy Schwarz; Augusta H. Simon; Mary Stephany; Pauline Strassburg; Norma Stude; Margaret Turner; Edward Unger; .Walter Veling and Mildred Veling, his wife; Edna Wagner; Eleanor Waigli; Helen Webster; Edna Wedig; John Weigand and Marie Weigand, his wife; Edith Weinhoff; Burkie R. West; Eleanor Wilson; Arthur Wiskow and Gertrude Wiskow, his wife; Frances Wisman; Margaret Witte; Marion Woleben; and Erika Wolf, Plaintiffs,

v.

COVENANT LIVING CENTERS–NORTH, INC.; Covenant Living Services Cooperative; Covenant Living Center-South, Inc.; Covenant Living Centers-Minnesota, Inc.; Rev. James G. E. Williams and Erna Wagner, Defendants.

C. A. No. 79–C–89.

United States District Court,
E. D. Wisconsin.

Feb. 4, 1980.

Mark W. Ninneman, Milwaukee, Wis., for plaintiffs.

Robert F. Rice, Menomonee Falls, Wis., for defendants.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action for declaratory and injunctive relief, contract reformation, and damages brought pursuant to 28 U.S.C. § 1332, the Securities Act of 1933, 15 U.S.C. § 2 and § 77a et seq., and Rule 10b–5 of the Securities and Exchange Commission. The plaintiffs are residents of a retirement center known as Tudor Oaks-North, located in Milwaukee, Wisconsin. The defendants Covenant Living Centers-North, Inc., Covenant Living Services Cooperative, Covenant Living Centers-South, Inc. (formerly Covenant Living Centers, Inc.), Covenant Living Centers-Minnesota, Inc., Rev. James G. E. Williams, and Erna Wagner are, respectively, the non-profit corporation which owns and operates Tudor Oaks-North, a cooperative association which renders management services to Tudor Oaks-North, a corporation which markets the services and contracts of the first two defendants, an associated non-profit corporation which owns residential retirement centers in Minnesota, and the president and an employee of Covenant Liv-

ing Centers-North, Inc.* Presently pending before the court is the defendants' motion to dismiss the complaint, which will be granted.

In their complaint the plaintiffs allege jurisdiction by virtue of diversity of citizenship and the Securities Act of 1933. Plaintiffs now concede that diversity jurisdiction does not exist. See 28 U.S.C. § 1332; *Strawbridge v. Curtis*, 3 Cranch 267, 2 L.Ed. 435 (1806); plaintiffs' brief filed November 23, 1979, at 1. At issue, therefore, is whether or not the residency contracts which the plaintiffs entered into with the defendant Covenant Living Centers-North, Inc., are investment contracts or securities within the meaning of 15 U.S.C. § 77b(1). That section provides:

> "(1) The term 'security' means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing."

In *Securities & Exchange Commission v. W. J. Howey Co.*, 328 U.S. 293, 298–9, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946), the Supreme Court defined an investment contract for purposes of the Securities Act as:

> " * * * a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party, it being

immaterial whether the shares in the enterprise are evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise. * * * "

See also *Goodman v. Epstein*, 582 F.2d 388, 406 (7th Cir. 1978). The plaintiffs in this case argue that their residency contracts are investments in the Tudor Oaks-North residential complex made for two profit-making purposes, first, as a shelter for plaintiffs from the rising cost of living, and second, for the guarantee of lifetime services in the form of apartment maintenance and nursing care.

In *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), the Court considered whether shares of stock purchased by prospective tenants in a low-income housing apartment complex as a prerequisite to their acquisition of an apartment were "securities" within the meaning of 15 U.S.C. § 77b(1), and concluded that they were not:

> " * * * The touchstone (of a security) is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others. By profits, the Court has meant either capital appreciation resulting from the development of the initial investment, * * * or a participation in earnings resulting from the use of investors' funds, * * *. In such cases the investor is 'attracted solely by the prospects of a return' on his investment. *Howey, supra*, [328 U.S.] at 300 [66 S.Ct. 1100, at 1103]. By contrast, when a purchaser is motivated by a desire to use or consume the item purchased—'to occupy the land or to develop it themselves,' as the *Howey* Court put it, *ibid.*—the securi-

---

* The Harris Trust & Savings Bank and the Central National Bank in Chicago hold mortgages on Tudor Oaks-North and were originally named as defendants. This action in its entirety was dismissed conditionally on February 21, 1979, and when it was revived on May 25, 1979, that second order did not apply to the two banks. Covenant Living Centers-Minnesota, Inc. was added as a party defendant by order dated October 12, 1979, which order also changed the name of the defendant Covenant Living Centers, Inc. to Covenant Living Centers-South, Inc.

ties laws do not apply. * * *" 421 U.S. at 852-3, 95 S.Ct. at 2060-2061. The Court concluded that:

" * * * (i)n short, the inducement to purchase was solely to acquire subsidized low-cost living space; it was not to invest for profit." 421 U.S. at 851, 95 S.Ct. at 2061.

The plaintiffs in this case are in a similar position, for it is obvious that their residency contracts, which are not transferrable or assignable, are entered into for the primary purpose of acquiring low cost living space, with the added feature of low cost maintenance and health care, and not for "profit" in the sense intended by the Supreme Court in *Howey* and *Forman*. See also *Joyce v. Ritchie Tower Properties*, 417 F.Supp. 53 (N.D.Ill.1976).

Plaintiffs also suggest that the court should examine their contracts in terms of risk capital rather than profit, as has been done by a few state courts, e. g., *Silver Hills Country Club v. Sobieski*, 55 Cal.2d 811, 13 Cal.Rptr. 186, 361 P.2d 906 (1961); *State v. Hawaii Market Center, Inc.*, 52 Haw. 642, 485 P.2d 105 (1971), and find the contracts to be securities. Since the Supreme Court to date has specifically declined to abandon the profit approach in favor of a risk capital approach, however, *United Housing Foundation, Inc. v. Forman*, supra, 421 U.S. at 857 n. 24, 95 S.Ct. at 2062 n. 24, it would be inappropriate for this court to do so.

IT IS THEREFORE ORDERED that the defendants' motion to dismiss the complaint is granted, and this action is dismissed in its entirety.