134 So.2d 843 (1961)
Anthony BARO, a minor, by his father and next friend, Peter Baro, and Peter Baro, individually, Appellants,
v.
Frank L. WILSON and Serena Beatrice Wilson, Appellees.
No. 61-72.
District Court of Appeal of Florida. Third District.
November 13, 1961.
Rehearing Denied December 11, 1961.
Nichols, Gaither, Green, Frates & Beckham, Miami, and Alan R. Schwartz, Miami Beach, for appellants.
Smith & Poole, and Jesse D. Henry, Miami, for appellees.
Before PEARSON, TILLMAN, C.J., and HORTON and BARKDULL, JJ.
*844 BARKDULL, Judge.
The appellant-plaintiff seeks review of a judgment entered upon a verdict directed for the defendant at the close of plaintiff's case.
The plaintiff sought damages for personal injuries, resulting from the alleged reckless and negligent operation of a vehicle driven by the defendant, Serena B. Wilson. The defendants denied the charge of negligence, and pleaded as an affirmative defense that the injuries and damages complained of were brought about by reason of the negligence and/or contributory negligence of the plaintiff.
This cause of action arose from an accident which occurred on the Rickenbacker Causeway, at the west end of the Bear Cut Bridge, where the bridge meets the land. The plaintiff was crossing the street from north to south, and was struck by a 1958 Chrysler operated by the defendant, Serena B. Wilson, who was driving west on the Causeway.
The facts show the plaintiff and two friends had been swimming under and to the north of the Rickenbacker Causeway, and that they had climbed the embankment, squeezed or walked through an opening between the fence and the bridge, and crossed the Causeway. The plaintiff was preceded across the highway by his two friends; then the plaintiff followed and was injured.
In his direct testimony, the plaintiff gave the following account of the accident:
"Q. (By Mr. Whitaker) Tell them just where you came up and just what happened. A. Well, we came up on the colored beach section up there, and we walked up the sand and got up on that cement thing, and you walk a little ways on a straight thing. Then started going up the embankment and walked up to the top through this little  there is two bolts like sticking out, whatever you call it.
"Q. Which way did you turn when you went through the bolts, between the bolts and the bridge? A. Looking out towards when you are going to Crandon?
"Q. Did you look toward down the bridge? A. Yes, sir.
"Q. Are cars visible at this point between the guard rail and this bridge abutment? A. You can see them before that.
* * * * * *
"Q. (By Mr. Whitaker) And did you see a car at that time when you looked down the bridge? A. I saw it, but it was pretty far back.
"Q. What did you do? A. I walked between the  what you call it  the little space there looking up, and it was still far away, so I could get across, so I started walking across.
"Q. Did you continue to look at the car or did you look in the direction you were going? A. I looked in the direction I was going.
"Q. Did you ever look back at the car, Tony? A. Just a split second before it hit me I looked.
"Q. Were you then stopped? A. Well, I was still moving when it hit me. I just put out my hand.
"Q. You put out your hand? A. Yes, sir."
On cross-examination, the plaintiff testified as follows:
"Q. You misjudged the distance this car was away from you when you started out there, didn't you? A. The distance I could get across?
"Q. You misjudged something, didn't you? A. Probably the speed.
"Q. You say it was going twenty miles per hour; is that right? A. No, sir; I didn't say that.

*845 "Q. You said approximately twenty miles per hour; is that right? A. I didn't say exactly. I meant that is the speed on the bridge and I figured that is what she would be going.
"Q. Then you misjudged the speed or the distance, didn't you? A. She was far away so I could get across. As far as I am concerned I could have made it.
"Q. Did you misjudge the speed? A. I suppose so. I figured she was going slower than she was.
"Q. Did you misjudge the distance? A. I couldn't tell you that. All I know, she was far enough away from me to get across.
"Q. So there is no question, did you give this answer to this question:
"Q. Why did you think that? A. It looked like it was coming down with the rest of the cars, about twenty miles an hour.' You gave that answer to that question? A. Yes, sir."
In all cases where a party moves for a directed verdict, that party admits, for purposes of the motion, the facts adduced and every conclusion favorable to his adversary that may be fairly and reasonably inferred therefrom, and the verdict may properly be directed only when the evidence viewed in such light is legally insufficient to support a verdict for the party against whom the motion is directed. See 32 Fla.Jur., Trial, §§ 91, 92.
Furthermore, a verdict for the defendant must be directed where no evidence is submitted upon which a jury could lawfully find for the plaintiff. See Manganelli v. Covington, Fla.App. 1959, 114 So.2d 320; Gilmer v. Rubin, Fla.App. 1957, 98 So.2d 367; Swilley v. Economy Cab Co. of Jacksonville, Fla. 1951, 56 So.2d 914.
In accordance with the aforementioned principles, the court takes the following statement of facts from the testimony of the plaintiff himself:
The plaintiff, a sixteen year old boy, was traveling south on the Rickenbacker Causeway, attempting to cross the highway from north to south and where it meets the bridge. When he was three and one-half feet from the north edge of the pavement, he noticed the defendant's vehicle approaching. He then traveled to the north edge of the pavement and once again looked at the defendant's vehicle. Then, rather than remaining there where he would have been safe, he walked at a normal pace into the path of the on-coming vehicle.
The law clearly holds that the rights of motorists and pedestrians on highways are reciprocal, and neither has a paramount right over the other. See Robb v. Pike, infra. Thus, where the plaintiff's own testimony is sufficient to show that he contributed proximately to whatever injury he may have sustained from a moving car, and in the absence of a showing of negligence on the part of the defendant, the trial court will not be deemed to have erred in directing a verdict for the defendant. See Carter v. Florida Power and Light Co., 138 Fla. 220, 189 So. 705; Robb v. Pike, 119 Fla. 833, 161 So. 732.
No negligence of the driver was shown. She testified she didn't see the plaintiff until the moment she struck him. She was traveling within the speed limit on a limited access facility, where pedestrians are not to be anticipated or expected to cross. The evidence disclosed the entire area was fenced in on both sides of the road for a distance in excess of 300 feet, both to the west and east of the point wherein the plaintiff entered the roadway.
No error having been demonstrated, the final judgment of the trial court is affirmed.
Affirmed.