CARROLL, DONALD K., Chief Judge.
The plaintiff in an action on a certificate of automobile collision insurance has appealed from a final judgment entered by the Court of Record of Escambia County based upon a directed verdict in favor of the defendants, the insurance company and a finance company.
Briefly stated, the plaintiff’s complaint alleges that on January 24, 1958, he entered into a conditional sales contract with a certain dealer for the purchase of a 1958 Plymouth automobile and immediately thereafter the dealer assigned its rights under the contract to the defendant finance company; that on or about the same date the defendant insurance company issued to him an insurance policy insuring the said automobile against loss from collision and upset; that on or about July 29, 1958, while the policy was in full force and effect, the said automobile suffered loss and damage by collision and upset in the amount of $3,000, yet the said insurer, though notified of the loss, has refused to pay him for the said loss and damage but has paid the sum of $2,345.54 under the policy to the defendant finance company, which “holds said sum only for the use and benefit of the plaintiff, but fails and refuses to pay it to the plaintiff.” The plaintiff then “demands judgment against the defendants jointly and severally, and each of them, in the sum of $3,000.00 plus costs and a reasonable attorney’s fee. * * * ”
In their answer they admit the allegations of the complaint concerning the making of the conditional sales contract, its assignment, the payment, and the insurance policy, but allege that the policy was issued to the defendant finance company with loss payable to such company “and to the Plaintiff, as their respective interests might appear.” As affirmative defenses the defendants allege that on 'September 27, 1958, the plaintiff and the defendant finance company entered into an agreement in which the plaintiff consented to the repossession by that company of the Plymouth automobile and waived any right to it, thereby waiving any right he might have in the proceeds of the insurance policy; and that at the time of the accident the plaintiff was using the said automobile in a business use not covered by the policy.
Several months before the trial the court had entered a summary judgment against the plaintiff, from which he appealed to this court. In our opinion, reported as Stoudt v. Securities Investment Company et al., 121 So.2d 438 (1960), we reversed this summary judgment, principally for the reason that the evidence showed that the defendant insurance company had paid the sum of $2,345.54 to the defendant finance company, the insured under the collision insurance certificate, which payment, we held, constituted a waiver by the insurer of its defense to the plaintiff’s recovery on the said certificate. However, after remand of the cause to the Court of Record, a jury trial was held during which the defendants introduced in evidence a “master policy” that had been entered into between the two defendants, which policy was not *124 in the record on the first appeal to' this; court. The plaintiff’s collision insurance' certificate was'1 issued pursuant to, and as' a part of, this master policy. The master policy contains a provision that the insurance thereunder of the interest of the defendant finance company “as to any automobile shall not be invalidated by any act or neglect of purchaser or borrower.” Under this provision the insurer was contractually required to make the payment to the finance company and we now hold that in doing so it did not waive its right to defend against the plaintiff’s claim. .
Item 1 of the certificate of collision insurance involved in this cause names the defendant finance company as the insured and the plaintiff as the purchaser or borrower, and also contains this provision “Subject to all the provisions, exclusions, conditions and declarations contained in the, master policy of which this certificate is apart, loss, if any, payable, as interest may appear, to the named insured and the purchaser or. borrower specified herein in item 1.”
The insurer’s limit of liability under this' certificate is actual cash value of the automobile less $50, payable to the plaintiff and the defendant finance company as their interests may appear. Under the established rule, apparently conceded by all parties to this appeal, this means the value of the automobile at . the time of the collision (or,more precisely, the moment before the collision occurred).
At the trial the plaintiff introduced in evidence as his first exhibit a conditional sales contract showing that-on January 24, 1958, he purchased a new 1958 Plymouth 4-door Suburban automobile from a dealer in Pensacola, Florida, for a total price of $3826.90. As a down payment he paid $350.40 in cash and he also received a trade-in allowance of $986.50. In this transaction he was charged $142.00 for car insurance premiums, $87.59 for life insurance accident and bail bond premiums, and $543.51 for finance charges. The balance of the time price for the automobile was $3263.10, payable in 30 monthly ihst'allments-of $108.-77 eadh, commencing March 10, 1958. ■ • ' •
The plaintiff testified at the trial that in July of 1958 on a road near Hattiesburg, Mississippi, while he was driving the said Plymouth and towing a repossessed automobile, pursuant to an employment contract with the General Motors Acceptance Corporation, he tried to avoid a head-on collision with an oncoming car, but the Plymouth went out of control and hit a guard rail, damaging the whole left side and front of his car.
The plaintiff also identified and introduced in evidence a statement of loss which he had sworn to and filed with the defendant insurance company. In. this sworn statement the plaintiff declared that the actual cash value of the automobile at the time of the loss'was $2785.00 and that the total amount claimed under the policy was-' $2735.00. In the same instrument he also directed the defendant insurance company to pay the -insurance proceeds as follows: $2386.31 to .the defendant finance company and $348.64 to himself.'
We have carefully reviewed the testimony adduced at the triai, together with the documentary evidence relied upon by the respective parties. .Taking into account the credits to which plaintiff was admittedly entitled for unearned finance charges and the salvage value of the automobile after the accident, we 'find that defendant Securities Finance Company received only the amount necessary to liquidate the unpaid balance due it by the plaintiff under his contract. With regard to the obligation of defendant insurance company, we find that based upon the admitted value of the plaintiff’s automobile at the time of loss as stated by him in the proof filed in accordance with the requirements of the insurance policy, the insurance company has discharged its full obligation by paying in cash the difference be-' tween the value of plaintiff’s automobile at time of loss and the value of the salvage *125 remaining after the accident which was owned by plaintiff and disposed of by him in settlement of his account with the finance company. Plaintiff having failed to establish any balance of payments due him by either the insurance company or the finance company upon the evidence contained in this record, no verdict in his favor at the hands of the jury could have been sustained. In this state of the evidence the trial court very properly granted the defendant’s motion for a directed verdict.
Much of the evidence at the trial and many of the arguments on appeal relate to the issues raised by the defendants in their two affirmative defenses, summarized earlier in this opinion, but we need not discuss these questions here in view of our conclusion that the plaintiff failed to prove his entitlement to any of the insurance proceeds under the terms of the certificate upon which he sues.
The final judgment appealed from is affirmed.
STURGIS and WIGGINTON, JJ., concur.