205 So.2d 347 (1967)
Kenneth B. MacALPINE and Bryte C. MacAlpine, a Partnership D/B/a Alpine Nursing Home, Appellants,
v.
Norma MARTIN, As Executrix of the Estate of Martha Mould, Deceased, Appellee.
No. 67-185.
District Court of Appeal of Florida. Second District.
December 20, 1967.
*348 Shackleford, Farrior, Stallings & Evans, Tampa, for appellants.
Jenkins, Abernathy & Dugan, St. Petersburg, for appellee.
LILES, Chief Judge.
This case has been before us previously. At that time it was dismissed because appellants were attempting to appeal from an unsigned minute book entry. MacAlpine v. Martin, Fla.App. 1966, 193 So.2d 206. See Egantoff v. Herring, Fla.App. 1965, 177 So.2d 260. The appeal has now been perfected so this case can be decided on its merits.
Appellee, plaintiff below, as executrix of the estate of Martha Mould, brought an action against appellants, defendants below, who were the owners and operators of a nursing home. The plaintiff's complaint *349 alleged that defendants were negligent in failing to properly supervise Mrs. Mould and as a result of this negligence she suffered a broken hip. The case was tried before a jury which returned a verdict for plaintiff. Defendants have appealed, attacking the sufficiency of the evidence to support such a verdict.
The facts developed at trial show that Mrs. Mould was 95 years of age when admitted to defendants' nursing home. She had glaucoma, cataracts, bad eyes, and was "unsteady on her feet." She was able to walk, however, and could see well enough to read. On the night of March 18, 1964, at approximately 9:30 p.m., Mrs. Mould was found on the floor of her room. She was lifted into a chair and then into bed. The next day it was discovered that Mrs. Mould had a broken hip. There were no eye witnesses who could testify as to how she came to be on the floor.
Mrs. MacAlpine, one of the defendants, stated that she knew Mrs. Mould had "slumped to the floor" twice before but without apparent injury. Mrs. MacAlpine also testified that Mrs. Mould was supposed to be assisted in preparing for bed and that if she had not been attended on the night in question, this would have been in violation of the rules and standard of care of the nursing home. The registered nurse on duty that night testified that no one helped Mrs. Mould get undressed for bed that evening. A notation on Mrs. Mould's chart for that night read:
"A very confused P.M. At 9:30 patient was found on floor. Picked up and placed in chair. Did not complain of severe pain  lifted into bed. * * *"
It was also established that Mrs. Mould normally was put to bed anytime between 7:00 to 9:00 or 9:30 p.m. No one testified as to what time Mrs. Mould went to bed on the night in question, nor was it established that Mrs. Mould was getting undressed and ready for bed when she fell, assuming that she did fall.
The general rule as to the duty of a hospital or nursing home towards its patients seems to be that:
"A hospital is bound to exercise toward a patient such reasonable care as his known condition may require, the degree of care being in proportion to his known physical and mental ailments. The extent and character of the care that a hospital owes its patients depends upon the circumstances of the particular case, and the measure of the duty of a hospital is to exercise that degree of care, skill and diligence used by hospitals generally in the community and required by the express or implied contract of the undertaking. * * *
"The above general rule as to the care a hospital should exercise in safeguarding patients submitted to its charge points out that one of the elements in determining the amount of care to be exercised is measured by the capacity of the patient to care for himself. * * *" Sprick v. North Shore Hospital, Inc., Fla.App. 1960, 121 So.2d 682, 684.
Under ordinary circumstances a hospital has the duty to provide such attendance as is necessary to prevent reasonably foreseeable injury to the patient in its care. See Evenson v. Miami Medical Center, Inc., Fla.App. 1961, 128 So.2d 626.
There is no doubt that the evidence supports a finding that Mrs. Mould required assistance in undressing and preparing for bed and that defendants knew of this and were aware that she had "slumped to the floor" twice before. No evidence was presented, however, showing that Mrs. Mould required constant attendance; that she needed side rails on her bed; or, in fact, that she needed help at any time other than when she was getting ready for bed.
Assuming, then, that defendants were negligent in failing to have someone help Mrs. Mould undress on the night of the accident, it is axiomatic that this negligence must be shown to have been the *350 proximate cause of her injury. To establish this, it is necessary to show that Mrs. Mould was actually undressing herself and preparing for bed when she was injured. We are of the opinion that this was not established. The only showing made was that Mrs. Mould was found on the floor in her room at 9:30 p.m. There was no testimony as to her clothing at that time. It was not shown whether Mrs. Mould was clothed as she was during the day, or whether she was dressed for bed. Thus, it cannot be determined that she fell while preparing for bed. It could just as well be inferred, for example, that she had already prepared herself for bed, had been in bed, and had then arisen. Although a jury is entitled to make all reasonable inferences from the evidence before it, an inference from the evidence in this case that Mrs. Mould was actually undressing herself and preparing for bed is more in the area of speculation and conjecture than of permissible inference.
It is true that a verdict should not be directed where there is sufficient evidence upon which a jury could make a determination. It is equally true that where no evidence is submitted upon which a verdict in favor of a plaintiff could lawfully be sustained, a defendant's motion for directed verdict should be granted. C. & H. Contractors, Inc. v. McKee, Fla.App. 1965, 177 So.2d 851; Stoudt v. Securities Investment Co., Fla.App. 1962, 140 So.2d 122; Baro v. Wilson, Fla.App. 1961, 134 So.2d 843. In the instant case, it has not been shown that Mrs. Mould's injury was the direct and proximate result of defendants' failure to assist her in getting ready for bed. She could have just as well fallen out of bed, tripped while walking about her room, or any of a number of other possibilities.
In view of the foregoing, the judgment is reversed.
ALLEN and SHANNON, JJ., concur.