255 So.2d 536 (1971)
FIRST AMERICAN FARMS, INC., a Corporation, Appellant,
v.
MARDEN MANUFACTURING COMPANY, a Partnership, Appellee.
No. O-446.
District Court of Appeal of Florida, First District.
December 9, 1971.
Rehearing Denied January 4, 1972.
*537 Barrow & Holley, Crestview, for appellant.
Clyde B. Wells, De Funiak Springs, for appellee.
JOHNSON, Judge.
First American Farms, Inc., appeals from a final judgment, entered pursuant to a jury verdict, ordering it to pay appellee the sum of $49,440.00 plus interest thereon.
Appellee instituted the present suit in order to obtain damages in the amount of the purchase price of a machine known as a PB-7 Bush Cutter. The evidence produced at the trial of this cause reveals the following facts. In the latter part of 1967 one of appellee's partners, Mr. Marion Denton, met with appellant's general manager and discussed the PB-7 Bush Cutter. After viewing some film showing the machine at work, appellant arranged to send a tractor and trailer to appellee's plant to pick up said machine and bring it back to appellant's farm for demonstration purposes. The trailer sent was too short to transport the PB-7, so Mr. Denton arranged at his own expense to have the PB-7 delivered to appellant's property.
One of appellee's employees came to appellant's farm with the PB-7 in order to instruct and supervise in the use of the machine. Appellant's employee drove the machine into a wet branch head where it got stuck when it hit the bed of a creek. After various futile attempts (which spanned a period of eight months), on the part of both appellant and appellee to remove the machine, appellee sent appellant an invoice for the purchase price of the PB-7. Upon appellant's refusal to pay the invoice, the present suit was instituted.
Appellee contended that the agreement between the parties was that appellant would either buy the machine or send it back to the appellee. Since appellant did not send it back, appellee claimed that there was a sale and that it was entitled to collect the purchase price of the PB-7 from appellant.
Appellant claimed that there was no sale and that appellee was therefore not entitled to receive the purchase price of the machine. It is emphasized by appellant that a contract for the sale of a $48,000.00 machine falls within the Statute of Frauds. Only an acceptance on the part of the appellant could bring the contract out of the requirement of a writing, and such was not demonstrated herein. Without an acceptance there was no contract as a matter of law and a verdict should have been directed, according to appellant. (See F.S.A. §§ 672.2-201 and 672.2-327).
A careful review of the testimony as revealed by the trial transcript convinces us that a verdict should have been directed in appellant's favor. It is apparent from the record that the machine was delivered to appellant's property for demonstration purposes only. Neither appellant nor appellee considered it to be a sale at this time. Mr. Denton testified that appellee attempted to get the machine returned to it for eight months and that he had another place to take the machine. Denton further testified as follows:
"Q. All right. So then when the machine arrived up here it wasn't sold, was it? As far as you were concerned, was it sold to them?
"A. No sir. As far as I was concerned it was not sold to them if they would send it back to me. There was a stipulation that if they did not send it back to me, it was sold to them.
"Q. On what date did you consider it sold?
"A. August 29, 1968.

*538 "Q. And that's the date you sent them the invoice?
"A. Correct. Yes sir.
"Q. Up until that time there was no sale?
"A. Up until that time I was doing everything possible to get it returned to us; sending our people and doing everything possible to have it returned. If it had been returned, that would have ended it. There would have been no sale. There would have been no bills to them. It was billed to them in exact conformity to their agreement and understanding."
At another time, Mr. Denton stated that "the contract with them was that they would send it back." Further testimony from other witnesses was to the same effect. It is clear that there was never the essential "meeting of the minds" to constitute a valid contract of sale.
Appellee's suit was based upon the breach of a contract of sale. It is our opinion that there was absolutely no evidence of a sale under the present circumstances and that appellant's motion for a directed verdict at the close of the evidence should have been granted. The record bears out the fact that the machine was delivered to appellant's property for demonstration purposes only. Mr. Denton himself testified that he did not consider the machine sold until he sent the invoice to appellant. If there was no agreement for sale prior to this time, the unilateral act of sending an invoice surely does not constitute a contract of sale. Since there was absolutely no evidence of an acceptance on the part of appellant, the suit was clearly barred by the Statute of Frauds and appellant should have been granted a directed verdict. As pointed out by various cases, where no evidence is submitted upon which a verdict in favor of a plaintiff could lawfully be sustained, a defendant's motion for a directed verdict should be granted. C. & H. Contractors, Inc. v. McKee, 177 So.2d 851 (Fla.App.2nd, 1965); Baro v. Wilson, 134 So.2d 843 (Fla.App. 3rd, 1961). In the present case, the manifest weight and probative force of the evidence required a verdict for the appellant, and the evidence was legally insufficient to support a verdict for the appellee.
It is apparent from the instructions given to the jury by the trial court that the trial court also misconstrued the specific testimony of representatives of the appellee to the effect that the appellee did not consider that a sale had been consummated, but because the machine had not been pulled out of the bog and returned, appellee elected to deem the transaction as a consummated sale. Had it not been for this misconstruction of the evidence by the trial court, we feel that the trial court would have directed the verdict in favor of the appellant under the allegations of this complaint. We do think from the evidence that the appellant could probably have been held liable for some damages under a different complaint for failure to pull the machine from the bog and reasonably cooperating with the appellee in getting the machine back to appellee where it could have been sold, the appellee having testified that it had a sale for the machine to another party.
Accordingly, this cause is reversed and remanded for further proceedings consistent with the view herein expressed.
Reversed and remanded.
SPECTOR, C.J., concurs.
WIGGINTON, J., dissents.
WIGGINTON, Judge (dissenting).
I regret that I am unable to agree with the majority opinion which holds that the trial court erred in denying appellant's motion for a directed verdict at the conclusion of all the evidence. To do so would violate the cardinal rules of appellate procedure *539 which prohibit an appellate court from retrying a case on the evidence, passing upon the credibility of the witnesses, weighing the evidence adduced at the trial, and substituting its judgment for that of the triers of the facts.
Only that portion of the evidence adduced at the trial which is favorable to appellant has been recited in the majority opinion as the established factual issues on which it relies for holding that the trial court erred. Such procedure is contrary to the established law of this state which directs that in passing upon the sufficiency of the evidence to support a verdict or judgment, the appellate court must view the evidence in a light most favorable to the prevailing party. That party in the case sub judice was the appellee and not the appellant.
A careful examination of the transcribed record of the trial proceedings reveals the following evidence which was adduced on behalf of appellee. Appellee is a manufacturer of farm machinery with its principal place of business located in south Florida at Auburndale. Appellant is the owner and operator of extensive farming operations in Walton County located in the northwest Florida panhandle. Appellant had purchased from appellee over a period of years items of heavy farm equipment totaling in value over $67,000.00. All such transactions were conducted and consummated on an informal basis without written contracts of sale. Appellee followed the practice of delivering its machines and equipment to appellant's farm at its request where, after trial use thereof, a check in payment of the equipment was sent by appellant to appellee, thereby completing the transaction. The dealings between the parties had always been agreeable and satisfactory.
Appellee developed in its plant a piece of heavy farm equipment known as a PB-7 brush cutter, the primary use of which was for clearing raw land. At the request of appellant's general manager, appellee sent to appellant a movie film showing how the brush cutter operated when performing the work for which it was designed. Appellant's manager expressed an interest in purchasing this equipment for use on appellant's farms and told appellee's president that he would send a transport truck to appellee's manufacturing plant at Auburndale, pick up the brush cutter and bring it back to the farm for a trial demonstration. The agreement made by appellant's manager was, to wit:
"I will send and get it, and I will buy it or I will send it back to you."
Based upon the foregoing agreement and understanding, appellant sent a transport truck to Auburndale for the purpose of returning the brush cutter to appellant's farms in Walton County. This transport was too small to accomplish the purpose intended, so appellee engaged the services of a larger truck with which the brush cutter was delivered to appellant's farms. Accompanying the equipment was a representative of appellee, whose mission was to supervise the trial demonstration of the brush cutter and instruct appellant's operator as to its proper use. At the time the demonstration took place, appellant's general manager was present and instructed his operator to drive the brush cutter into a low swampy area on the farm. Appellee's representative promptly advised appellant's manager that the brush cutter was not designed to operate in that type of terrain and that if it was driven into the swamp, it would get stuck and be difficult to retrieve. Appellant's manager nevertheless persisted in ordering his operator to drive the brush cutter into the swamp and stated that if it got stuck, he certainly had the equipment to get it out. In response to the explicit directions given by appellant's manager, its employee drove the brush cutter into the swamp where it immediately became stuck and from which it was unable to remove itself by its own power. Appellant's manager represented that he would do what was necessary to have the brush cutter removed from the swamp, but such effort was postponed at that time. Over a *540 period of the next eight months appellee sent its representative to appellant's farm on several occasions for the express purpose of assisting in removing the brush cutter from the swamp in which it was mired, but on each occasion the operation to extricate the equipment was delayed by appellant for first one reason and then another.
The record clearly establishes that appellee advised appellant's manager that he had another sale for the brush cutter and that if appellant was not going to keep it, then he demanded that it be returned to appellee's plant at Auburndale at once. Such demand was ignored by appellant's general manager and no steps were taken to pull the equipment out of the swamp and return it to appellee in accordance with the parties' original understanding and agreement. Based upon the foregoing facts, appellee treated appellant's failure to return the equipment to it as an acceptance of the brush cutter, carrying with it the concomitant obligation to pay the purchase price thereof. Appellee thereupon transmitted to appellant an invoice for the brush cutter and demanded payment, which demand was refused. It was because of such refusal that this suit was instituted by which appellee claimed judgment for the purchase price of the equipment delivered by it to appellant.
The sole issue in the case involves the question of whether a contract of purchase and sale of the equipment had been consummated between the parties. On this issue the trial court fully and fairly instructed the jury on what facts were required to be established to its satisfaction in order to prove that a sale of the equipment had been made, as well as the elements which were required to be proved in order to establish an acceptance by appellant of the equipment carrying with it the agreement to pay the purchase price thereof. There is no contention that the court's instructions to the jury were erroneous in any respect or did not follow established principles of law. It is evident from the verdict that the jury believed that evidence introduced by appellee which showed an acceptance by appellant of the equipment arising from the fact that it failed or refused to return it to appellee within a reasonable time after delivery to it in accordance with their agreement and, therefore, was bound by such agreement to pay for the equipment at the price originally quoted.
In the early case of Carolina Lumber Company v. Daniel[1] this court held:
"Appellate courts are not constituted for the purpose of relitigating issues of fact already decided by the trial court. It is not the province of an appellate court to revaluate conflicting evidence introduced at the trial or to say what it would have done had it been sitting as a trier of the facts. This is the exclusive function of the trial court. In such cases it is the duty of an appellate court to determine whether the trial judge or chancellor made any ruling or conducted the proceedings in a manner contrary to established principles of law to the prejudice of the appellant. Unless error can be clearly demonstrated, the judgment of the trial court will not be disturbed on appeal."
Stating the controlling principle differently but with the same effect, the Third District Court of Appeal in the case of Old Equity Life Insurance Company v. Levenson[2] said:
"It is not the function of this or any other appellate court to substitute its judgment for the trier of fact, be it a jury or a trial judge, and although we might have reached a different conclusion if we had been the initial arbitrator of the factual issues, we are not at liberty to substitute our judgment for that of the trier of the facts if there is evidence to *541 support the complained of ruling and/or judgment. There is sufficient evidence in this record and, therefore, we are compelled to affirm."
I conceive the foregoing quoted principles of law to be controlling in the case sub judice. As demonstrated above, the record contains competent and substantial evidence which sustains the verdict of the jury when tested in the light of the correct principles of law embodied in the trial court's instructions. To set aside that verdict and hold that the trial court erred in denying appellant's motion for a directed verdict would violate the foregoing principles of appellate procedure in their entirety. I must therefore reluctantly dissent.
NOTES
[1] Carolina Lumber Company v. Daniel (Fla.App. 1957), 97 So.2d 156, 158.
[2] Old Equity Life Insurance Company v. Levenson (Fla.App. 1965), 177 So.2d 50, 51.