384 So.2d 179 (1980)
ARTISTIC DOOR CORP., a Florida Corporation, and Artistic Fiberglass Corp., a Florida Corporation, Appellants,
v.
William H. RHENEY et al., Appellees.
No. 78-2399.
District Court of Appeal of Florida, Third District.
May 13, 1980.
Rehearing Denied June 27, 1980.
*180 Adolfo del Castillo, Coral Gables, Goodwin, Ryskamp, Welcher & Carrier and Kenneth L. Ryskamp, Miami, for appellants.
Carl H. Hoffman, Miami, for appellees.
Before HENDRY and SCHWARTZ, JJ., and VANN, HAROLD R. (Ret.), Associate Judge.
PER CURIAM.
This is an appeal by the defendants, Artistic Door Corp. and Artistic Fiberglass Corp., from a final summary judgment wherein the trial court held that certain subcontractor agreements sold by the appellants were in fact securities required to be registered pursuant to the provisions of Chapter 517, Florida Statutes (1975).
The plaintiffs have cross appealed an order of the trial court denying their motion for directed verdict against an individual defendant, one Jose D. Susacasa, who they claimed violated Section 517.21(1), Florida Statutes (1975) and was therefore personally liable.
The undisputed facts in this case show that Artistic Fiberglass Corp. was formed for the purpose of selling certain subcontractor agreements. The individual defendants, Don Phillips and Jose D. Susacasa, owned Artistic Fiberglass Corp. A short period after implementing and actually selling some of the subcontract agreements, Susacasa and Phillips terminated their relationship and Susacasa formed the Artistic Door Corp. which continued selling the subcontractor agreements. Other than legal fees and costs of incorporation, Susacasa and Phillips did not put any money into either of the corporations. The corporations' sole source of income and working capital was derived from the sale of the subcontractor agreements. The corporations' place of business was located on the premises of Southern Cabinet (a proprietorship owned by Susacasa and his wife) from which the corporations purchased the necessary kits to be distributed to purchasers of the subcontractor agreements. Sales of the subcontractor agreements were generated principally by the running of paid advertisements in classified sections of local newspapers. The advertising for subcontractor agreements offered potential purchasers continuing income at a rate of $300 per week based upon an initial investment of $2,995. Upon purchase of the subcontractor agreement the purchaser was to receive six kits for the assembly of fiberglass doors and the tools needed to effect such assembly. The purchaser was also given some training to enable him to assemble the doors. The income promised arose from that portion of the subcontractor agreement whereby the company obligated itself to purchase from the subcontractor up to a total of six doors each week for a period of two years. The subcontractor was to be paid $50.00 per door and was to be supplied with a replacement kit for each door purchased by the company. Subcontractors could, in some instances, sell any doors they produced over six each week on the open market, but the plan was designed for a maximum production of six doors a week. Individuals could purchase more than one subcontractor agreement thereby increasing the number of doors they could sell to the company. The companies did in fact purchase the assembled doors from various subcontractors but at no time did they resell any of these doors. They continued to purchase some 1,000 doors until a temporary restraining order prohibited the sale of any *181 more subcontractor agreements. Thereupon, the company refused to purchase additional assembled doors.
Based upon these undisputed facts the trial court concluded as a matter of law that the subcontractor agreements were investment contracts and, therefore, were securities within the meaning of Section 517.02(1), Florida Statutes (1975), and were required to be registered pursuant to the applicable provisions of Chapter 517, Florida Statutes (1975). We agree and hereby affirm the final summary judgment appealed herein.
Section 517.02(1), Florida Statutes (1975), defines a security for purposes of Chapter 517, Florida Statutes (1975), as follows:
"(1) `Security' shall include any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation, whiskey warehouse receipt or other commodity warehouse receipt, or right to subscribe to any of the foregoing; certificates of interest in a profit-sharing agreement, or the right to participate therein; certificate of interest in an oil, gas, petroleum, mineral or mining title or lease, or the right to participate therein; collateral trust certificate, preorganization certificate, preorganization subscription, or any transferable share, investment contract, or beneficial interest in title to property, profits or earnings; interests in or under a profit-sharing or participation agreement or scheme, or any other instrument commonly known as a security, including an interim or temporary bond, debenture, note, certificate or receipt for a security or for subscription to a security." (Emphasis added)
Florida courts have recognized two separate and distinct tests for determination of whether or not a transaction (such as involved herein) constitutes an investment contract and consequently a security subject to the provisions of Chapter 517, Florida Statutes. These tests are known as the Howey Test and the Risk Capital Test. See Florida Discount Centers, Inc. v. Antinori, 226 So.2d 693 (Fla. 2d DCA 1969); Frye v. Taylor, 263 So.2d 835 (Fla. 4th DCA 1972); O'Neill v. State, 336 So.2d 699 (Fla. 4th DCA 1976); Levine v. I.R.E. Properties, Inc., 344 So.2d 938 (Fla. 3d DCA 1977).
The Howey Test as set forth in Securities and Exchange Commission v. W.J. Howey & Company, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946) is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of another.
The Capital Risk Test as formulated in Silver Hills Country Club v. Sobieski, 55 Cal.2d 811, 13 Cal. Rptr. 186, 361 P.2d 906 (1961) and State ex rel Healy v. Consumer Business Systems, Inc., 5 Or. App. 19, 482 P.2d 549 (1971) holds that a particular financial activity constitutes an offer of an investment contract if a substantial portion of the capital which a franchisor uses to initiate its operations is being provided by the franchisees.
Whether or not the instant transaction falls within the definition set forth in either or both of these tests is dependent upon the facts and circumstances of this individual case. Levine v. I.R.E. Properties, Inc., supra. Viewing this transaction with that in mind we find that it meets the criteria of both tests and constitutes a security within the definition of Section 517.02(1), Florida Statutes (1975). Under the Howey Test the instant case clearly shows that while the subcontractors did assemble the doors in question their source of return on their investment was to be derived solely by the efforts of the companies, to-wit: the finishing and sale of said doors by the companies. Its failure to effectuate a resale of said doors would of necessity eventually render it unable to purchase said doors from the subcontractors as assembled. As to the Capital Risk Test the facts of this case clearly show that all of the capital used to initiate the companies' operations did in fact come from the subcontractors.
Therefore, we find the trial court was correct in holding that the transactions were in fact securities under Section 517.02(1), Florida Statutes (1975) and that the *182 transactions were invalid for failure to register pursuant to the provisions of Chapter 517, Florida Statutes (1975).
As to the appellees' cross appeal we find that the trial court erred in failing to direct a verdict in favor of plaintiffs against the individual defendant Jose D. Susacasa and reverse.
Section 517.21(1), Florida Statutes (1975) provides that an officer, director or agent of the seller may be held personally liable for the sale of illegal securities if that individual has engaged in some act or conduct which induces the purchaser to invest. Ruden v. Medalie, 294 So.2d 403 (Fla. 3d DCA 1974). Susacasa's uncontradicted testimony clearly reveals that his conduct throughout the entire transaction (including but not limited to the placing of advertising; permitting the corporations to locate their offices at his place of business, Southern Cabinet; being 100% shareholder of Artistic Door Corp.; and permitting the use of the premises of Southern Cabinet for solicitation of the subcontractor agreements) was more than sufficient to render him individually liable to the purchasers of the subcontract agreements. See Strom v. Black, 22 Ariz. App. 102, 523 P.2d 1339 (1974).
In light of that uncontradicted testimony, there was no evidence submitted upon which a verdict for Susacasa could lawfully be sustained and the trial court should have granted the plaintiffs' motions for directed verdict. Baro v. Wilson, 134 So.2d 843 (Fla. 3d DCA 1961); C & H Contractors, Inc. v. McKee, 177 So.2d 851 (Fla. 2d DCA 1965); First American Farms Inc. v. Marden Manufacturing Company, 255 So.2d 536 (Fla. 1st DCA 1971); Schnabel v. Mormann, 324 So.2d 197 (Fla. 1st DCA 1976).
Based on the foregoing, the summary judgment finding that the subcontracts sold herein were in fact securities and imposing liability against the defendant corporations is hereby affirmed.
The order denying the plaintiffs' motions for directed verdict against the individual defendant, Susacasa, is reversed and remanded with directions that judgment be entered in favor of the appellees, plaintiffs in the trial court.
Affirmed in part, reversed in part and remanded with directions.