**SCHOLARSHIP COUNSELORS, INC., etc.,
et al., Appellants,**

v.

**R. B. WADDLE, Jr., et al., Appellees.**

Court of Appeals of Kentucky.

March 1, 1974.

Michael Avedisian, Avedisian & Avedisian, Paducah, for appellants.

Robert P. Ross, Asst. Director and Atty., Dept. of Banking, Frankfort, for appellees.

GEORGE E. BARKER, Special Commissioner.

This is an appeal from a final order of the Franklin Circuit Court which affirmed the Findings of Fact, Conclusions of Law and the Cease and Desist Order issued by the Director, Division of Securities, Department of Banking and Securities of Kentucky.

The Cease and Desist Order prohibited the appellants from making further offers and/or sales of a certain "scholarship plan" or program until there had been compliance with Chapter 292 of the Kentucky Revised Statutes. (Kentucky's Blue Sky Law)

The Order issued by the Director was appealed to the Franklin Circuit Court in accordance with KRS 292.490 which statute provides, among other things, that the findings of the Director as to the facts, if supported by substantial evidence, are conclusive. Neither party to the proceeding before the Circuit Court applied for leave to adduce additional evidence and the matter was submitted upon the same record which had been presented to the Director, consisting of various documents filed by appellants as exhibits and which for the

most part purport to show the organization and operation of Scholarship Counselors, Inc. and the Scholarship Trust Fund and to provide an explanation of the "scholarship plan" promoted by these organizations. Copies of these same exhibits constituted the entire evidentiary record on appeal to this Court.

The Franklin Circuit Court found that the record contained substantial evidence supporting the findings and order of the Division of Securities and there would appear to be no substantial issue as to the facts. It is the principal contention of appellants that the conclusions of law of the Director which were approved by the Circuit Court are not warranted by the facts and are erroneous and contrary to law.

The Director of the Division of Securities made the following findings of fact which we find are supported by substantial evidence:

1. Scholarship Counselors, Inc. is a Kentucky corporation organized under the laws of the Commonwealth of Kentucky on the 15th day of July, 1968, with offices located at Suite 106–107 Executive Building, 115 South 17th Street, Paducah, Kentucky 42001.

2. Joe T. Kelly is president of Scholarship Counselors, Inc.

3. Scholarship Counselors, Inc. is the sole and exclusive marketing agent of the Program.

4. A Trust Agreement was made and entered into on the 24th day of February, 1969, involving the Board of Trustees, depositors and sponsors, which Trust set up "The Scholarship Trust Fund."

5. The Board of Trustees which manages "The Scholarship Trust Fund" is comprised of Dr. Harry M. Sparks, Dr. Robert L. Mills and Dr. Adron Doran, presidents of Kentucky colleges. A contract between the Board of Trustees and The Kentucky Trust Company provides that the Louisville Trust Company is to manage the Trust Funds.

6. No administrative agency of either the federal or state government is regulating or governing the activities of this Program.

7. Sales of the Program are effected by Scholarship Counselors, Inc. representatives who call on prospective purchasers and offer them membership in "The Scholarship Trust Fund" upon payment of $175 enrollment fee. The Program member then deposits a certain calculable sum (depending on the age of the children and payment plans) into a savings account and irrevocably assigns the interest earned on such account to The Scholarship Trust Fund. The depositor then has the privilege of naming a beneficiary, usually his own child. The Trust agrees that upon entry of the beneficiary into the second year of college, it will pay the costs of room, board, tuition and other college fees from a pro rata share of that beneficiary's interest in the Trust. Projections of $1,500 per year are contemplated by the advertising material.

8. Success of the Trust Plan is predicted upon a system of actuarial formulae which are based upon educational dropouts, death and other factors which are calculated to eliminate certain of the beneficiaries. Of the original investment of $175 which is considered enrollment fee or commission, none of this amount goes directly to the Trust for availability in distribution to the beneficiaries but a small portion is used to defray trust expenses. Of this amount, Scholarship Counselors, Inc. receives approximately $155, none of which is returnable after thirty days.

9. The Trust is administered by the Trustees without any control or voice by the investor and the inves-

tor must rely solely on the operation of the Trust by the Trustees to gain any potential benefit for the beneficiary.[1]

10. Scholarship Counselors, Inc. is not registered in Kentucky as a Kentucky broker or dealer.

11. Scholarship Trust Fund is not registered to sell its securities in Kentucky.

12. Joe T. Kelly is not registered as a securities agent.

Based upon these findings the Director of Securities concluded that the investment in the Scholarship Fund was an "investment contract" and hence a "security" subject to regulation as defined by KRS 292.-310(11) which reads as follows:

" 'Security' means any note, stock, treasury stock, bond, debentures, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, *investment contract*, voting-trust certificate, certificate of deposit for a security; or, in general, any interest or instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. 'Security' does not include any insurance or endowment policy or annuity contract under which an insurance company promises to pay a fixed number of dollars either in a lump sum or periodically for life or some other specified period;" (Emphasis added)

The Director further concluded that this "investment contract" was not a security entitled to an exemption under the provisions of KRS 292.400(9) which reads as follows:

"Any security issued by any person organized and operated not for private profit but exclusively for religious, *educational,* benevolent, charitable, fraternal, social, athletic, or reformatory purposes, or as a chamber of commerce or trade or professional association;" (Emphasis added)

The first conclusion of the Director is based principally upon the definition of an investment contract as set out in the case of Securities and Exchange Commission v. W J. Howey Co., (1946), 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244, 163 A.L.R. 1043. In pertinent part the decision in that case reads as follows:

"The term 'investment contract' is undefined by the Securities Act[2] or by rel-

---

1. It should be noted that on March 26, 1971 following the entry of the Director's Cease and Desist Order on February 18, 1971, the Board of Trustees of the Scholarship Trust Fund had a called meeting for the primary purpose of adding new members to the Board of Trustees. At this meeting attended by two of the three Trustees a resolution was passed accepting the resignation of the third Trustee, Dr. Adron Doran, and a resolution electing seventeen additional Trustees from a list of the current investors in the fund (called sponsors). Eight sponsors were elected to serve for a period of one year and nine sponsors were elected to serve for a period of two years. According to the minutes of the meeting which are filed with the record, it was the stated purpose of the Board in electing additional Trustees to give the sponsors or investors absolute control or voice in the administration and invest-ment of the monies of the Trust Fund and thereby take the Trust Fund out of the definition of a "security" under KRS 292.310 (11). On March 30, 1971, appellants by letter requested the Director of Securities to modify his findings, conclusions and order specifically with reference to the findings of fact contained in this paragraph and the conclusions of law based upon such finding. By letter of April 2, 1971 the Director of Securities refused to do so.

2. This case involved the application of Section 2(1) of the Securities Act of 1933 [15 U.S.C.A. Section 77b(1)] to an offering of units of a citrus grove development coupled with a contract for cultivating, marketing, and remitting the net proceeds to the investor. Section 2(1) of the Securities Act contains language substantially the same as KRS 292.310(11).

evant legislative reports. But the term was common in many state 'blue sky' laws in existence prior to the adoption of the federal statute and, although the term was also undefined by the state laws, it had been broadly construed by state courts so as to afford the investing public a full measure of protection. Form was disregarded for substance and emphasis was placed upon economic reality. An investment contract thus came to mean a contract or scheme 'for 'the placing of capital or laying out of money in a way intended to secure income or profit from its employment.' State v. Gopher Tire & Rubber Co., 146 Minn. 52, 56, 177 N.W. 937, 938. This definition was uniformly applied by state courts to a variety of situations where individuals were led to invest money in a common enterprise and with the expectation that they would earn a profit solely through the efforts of the promoter or of someone other than themselves.

" * * * In other words, an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profit solely from the efforts of the promoter or a third party, it being immaterial whether the shares in the enterprise evidenced by formal certificates or by nominal interests in the physical assets employed in the enterprise."

\* \* \* \* \* \*

" * * * The test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others. If that test be satisfied, it is immaterial whether the enterprise is speculative or nonspeculative or whether there is a sale of property with or without intrinsic value. * * * The statutory policy of affording broad protection to investors is not to be thwarted by unrealistic and irrelevant formulae."

Appellants concede the validity of the definition of investment contract contained in the Howey case, which has been cited and consistently followed by both federal and state courts in cases too numerous to mention. See 47 A.L.R.3rd 1379, 3 A.L. R.Fed. 595 and 4 A.L.R.Fed. 1055.

■ Appellants maintain that the Howey case does not apply to the case at bar for two reasons. First, appellants allege that under the Scholarship Trust Agreement nothing is offered for sale, sold or purchased except a service to be rendered for a very nominal, one-time service charge paid by the sponsor from which he expects and receives nothing more than service contracted for. They allege that the assignment of earned interest is in the nature of an irrevocable gift exclusively for educational purposes. They cite the cases of Lewis v. Creasey Corp., 198 Ky. 409, 248 S.W. 1046, and Silver Hills Country Club v. Sobieski, 55 Cal.2d 811, 13 Cal. Rptr. 186, 361 P.2d 906, 87 A.L.R.2d 1135, in support of the proposition that a contract providing only for the sale of services is not within the scope and purpose of the securities law. The alleged factual basis for this argument borders on the frivolous and the cited cases do not support the proposition stated. In the Sobieski case the Court held that the sale of country club memberships clearly came within the scope of the securities regulation even though the purchasers expected no profit, but only the rendition of certain facilities and service. In the Creasey case the Kentucky Court considered a contract whereby a grocery corporation agreed to furnish a customer groceries over a period of time at a reduced cost in consideration of a deposit of $300.00. The Court held this contract not a security under the restricted language of the Blue Sky Law in effect at that time (1923) which made reference only to "any contract, stock, bonds, or other security . . ." Needless to say the Kentucky Blue Sky Law has undergone extensive revision since 1923 and the hold-

ing in the Creasey case is no longer applicable.

For their second attack on the definition of investment contract in the Howey case, appellants argue that the anticipated profits from the scholarship plan can be realized only if the investor makes his payments as agreed and does not withdraw the deposit and only if the sponsored candidate maintains his grades and remains qualified for his sophomore, junior, and senior years in a college or university. Therefore, appellants contend that the expected profits can only come about through the joint efforts of the fund custodian, the Board of Trustees, the investor and the sponsored candidate. They seek an extremely strict interpretation of the language in the Howey definition which reads, " * * * and is led to expect profits *solely* from the efforts of the promoter or a third party, * * *."

The most obvious answer to this argument is that the efforts of the sponsor and the candidate to remain qualified do absolutely nothing to contribute to the production of a profit on the investment. Secondly, we find that the great majority of courts considering the question have been unwilling to place such a strict interpretation upon the Howey definition. In the case of Securities and Exchange Commission v. Glenn W. Turner Enterprises Inc. (DC Or.), 348 F.Supp. 766, affd. (CA 9), 474 F.2d 476, the Court stated as follows:

"For purposes of the present case, the sticking point in the Howey definition is the word 'solely,' a qualification which of course exactly fitted the circumstances in Howey. All the other elements of the Howey test have been met here. There is an investment of money, a common enterprise, and the expectation of profits to come from the efforts of others. Here, however, the investor, or purchaser, must himself exert some efforts if he is to realize a return on his initial cash outlay. He must find prospects and persuade them to attend Dare

Adventure Meetings, and at least some of them must then purchase a plan if he is to realize that return. Thus it can be said that the returns or profits are not coming 'solely' from the efforts of others.

"We hold, however, that in light of the remedial nature of the legislation, the statutory policy of affording broad protection to the public, and the Supreme Court's admonitions that the definition of securities should be a flexible one, the word 'solely' should not be read as a strict or literal limitation on the definition of an investment contract, but rather must be construed realistically, so as to include within the definition those schemes which involve in substance, if not form, securities."

It is our opinion that the Director of Securities and the Franklin Circuit Court were correct in concluding that the scholarship plan or program was a security subject to regulation.

It is further our opinion that the enlargement of the Board of Trustees to include representatives of the investors or sponsors does absolutely nothing to change the basic nature of this investment contract.

■ Appellants further contend that if the Scholarship Plan is a security then it is entitled to an exemption from registration under KRS 292.400(9) because issued by a person organized and operated not for private profit but exclusively for educational purposes. While it is true that the interest deposits and the profits realized therefrom are irrevocably ear-marked to pay educational expenses, the payment of such expenses inures to the benefit of the private investors or sponsors rather than the public generally. Therefore, it cannot be said that the Scholarship Trust Fund is organized and operated not for private profit. In their brief appellants state that the sole purpose of the trust agreement is to provide a method for parents or sponsors

(investors) to accumulate funds for qualified student candidates to attend a college, university or institution of higher learning of their choice. The entire thrust of the advertising for this plan is that it will provide the funds for the sponsor's child to attend college and not just any qualified student candidate. While the scholarship plan necessarily must involve a great deal of faith and hope, there is no mention of charity.

An educational scholarship scheme very similar to the plan in this case was considered by the Federal Court in the case of Securities and Exchange Commission v. American Foundation for Advanced Education of Arkansas (W.D.La.), 222 F.Supp. 828 (1963). The following conclusions of that Court are especially appropriate for the case at bar.

"Even conceding that The Foundation is a nonprofit organization under the laws of Arkansas, by establishing a membership requirement as a prerequisite to the privilege of purchasing debentures with their attendant benefits, the profits of The Foundation are returned to its members. Consequently, it does not operate exclusively for education purposes.

"This element of profit to the individual member is the principal motivation for the purchase of debentures. In this instance we conclude that the universal desire of parents to secure the advantages of higher education for their children and to offset whenever possible the increasing cost of such education, makes the application of the registration requirements of the Securities Act emphatically necessary here. While there is no showing of fraud or misrepresentation of any kind and it may well be that the founders of The Foundation are themselves actuated by a sincere desire to aid their fellowman and to foster the education of the youth of this nation, the opportunities for wrongdoing with such a broad and fertile field of prospective investors are unlimited.

"While the plan developed by The Foundation may ultimately prove to be entirely feasible, the objects and purposes of the Securities Acts to protect the investing public require compliance with their terms by these defendants."

It is our opinion that the Scholarship Plan or program is a security and is not exempt. It necessarily follows under the provisions of the Act that Scholarship Counselors, Inc. be required to register as a Broker-Dealer.

The judgment is affirmed.

All concur.