**SECURITIES ADMINISTRATOR, Plaintiff-Appellee,**

v.

**The COLLEGE ASSISTANCE PLAN (GUAM), INC., Enrique A. Sobrepena, Jr., Rose Sobrepena, and Alexander Bernales, Defendants-Appellants.**

**No. 82–4040.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 24, 1983.

Decided Feb. 28, 1983.

Paul J. Rodgers, Agana, Guam, for defendants-appellants.

Roland Fairfield, Asst. Atty. Gen., Agana, Guam, for plaintiff-appellee.

Before ELY and KENNEDY, Circuit Judges, and NIELSEN,* District Judge.

PER CURIAM:

## I. FACTUAL BACKGROUND

This is a securities regulation case in which this Court is asked to interpret the term "investment contract" under the Guam Uniform Securities Act, Title XLI of the Government Code of Guam (1970). Plaintiff-Appellee, Securities Administrator for the Government of Guam ("Securities Administrator") sued in the Superior Court of Guam for injunctive relief and receiver-

---

* The Honorable Leland C. Nielsen, United States District Judge for the Southern District of California, sitting by designation.

ship of defendants-appellants, The College Assistance Plan (Guam), Inc. ("CAP"), alleging that its pre-need college tuition purchase plan is a security being sold without having first been registered with and cleared for sale by the Securities Administrator. The Superior Court of Guam granted summary judgment in favor of the defendants. Plaintiff appealed to the Appellate Division of the United States District Court of Guam pursuant to the court's appellate power as provided by 48 U.S.C. § 1424. The three-judge court filed an Opinion on December 22, 1981, 533 F.Supp. 118, which reversed the judgment of the Superior Court and instructed that court to enter judgment for the Securities Administrator. CAP appeals this holding pursuant to 28 U.S.C. § 1294(4).

CAP is a duly licensed Guam corporation which has been in the business of publicly marketing pre-need college tuition plans known as "Scholarship Funding Agreements" ("Funding Agreements") since May 1979. No agency of the federal Government or the Government of Guam regulates the activities of CAP. The Funding Agreements operate as follows. After remitting a lump sum or arranging for installment payments, the purchaser designates a beneficiary under eleven years of age. Once the beneficiary begins college, the plan pays for the tuition and standard college fees and services for the first semester. Payment of standard college fees and services continues for a basic four-year college program leading to a bachelor's degree. The purchaser may transfer benefits from one beneficiary to another under specific limited conditions, but may not fully redeem payments or resell the right to future benefits.

Under the terms of a standard Funding Agreement, CAP is entitled to the first forty percent of a purchaser's contribution for the payment of administrative expenses. The remaining sixty percent constitutes a "Scholarship Reserve" which is placed in a trust account. The Funding Agreement also provides that the Scholarship Reserve will be administered by a CAP designated trustee and that forty percent of any and all income gains and increments from these funds will accrue to the Scholarship Reserve. Any income realized by the Scholarship Reserve results solely from CAP's investment judgment and abilities, since a purchaser is precluded from any participation in investment decisions.

Although CAP apparently drafted a trust agreement, it never established a trust account. Instead it opened a checking and savings account to which only it had access.

## II. ANALYSIS

In light of these facts and the aforementioned procedural history, this court is presented with only one issue: whether the Appellate Division of the District Court of Guam correctly ruled that the Scholarship Funding Agreements offered by CAP constitute investment contracts and are, therefore, securities within the Guam Uniform Securities Act, Title XLI of the Government Code of Guam (1970).

The concept of investment contracts is a broad one, bringing many financing activities having the nature of securities transactions, but not in the ordinary form, under the purview of both state and federal securities statutes. Historically, the term investment contract has been liberally interpreted by the courts to apply to a wide range of schemes, especially where state regulators or the Securities & Exchange Commission have sought injunctions against activities for which there was no appropriate remedy available under other laws designed to protect the public.

The Appellate Division cites two cases with only "minor factual differences" in support of its conclusion that the CAP plans are investment contracts. *SEC v. American Foundation for Advanced Education of Arkansas,* 222 F.Supp. 828 (W.D.La.1963); *Scholarship Counselors, Inc. v. Waddle,* 507 S.W.2d 138 (Ky.App.1974). Although *American Foundation* arose under the Securities Act of 1933 and *Waddle* arose under a Kentucky securities statute, both cases concluded that pre-need college tuition plans were investment contracts and, therefore, securities. In *American Foundation,* the court stated:

## 550

"In this instance we conclude that the universal desire of parents to secure the advantages of higher education for their children and to offset whenever possible the increasing cost of such education, makes the application of the registration requirements of the Securities Act emphatically necessary here. While there is no showing of fraud or misrepresentation of any kind and it may well be that the founders of The Foundation are themselves actuated by a sincere desire to aid their fellowman and to foster the education of the youth of this nation, the opportunities for wrongdoing with such a broad and fertile field of prospective investors are unlimited."

*American Foundation* at 831.

In support of the *American Foundation* and *Waddle* decisions, this court is mindful of the Supreme Court's admonition in *SEC v. C.M. Joiner Leasing Corp.*, 320 U.S. 344, 351, 64 S.Ct. 120, 123, 88 L.Ed. 88 (1943), that "the reach of the Act does not stop with the obvious and commonplace," and the oft-quoted directive in *SEC v. W.J. Howey, Co.*, 328 U.S. 293, 299, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946), that the concept of security "embodies a flexible rather than a static principle, one that is capable of adaption to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." We are also aware that the design of the securities laws and their purpose for requiring registration of all securities in the absence of statutory exemption is to protect investors by promoting and requiring a full disclosure of information thought to be necessary to persons desiring to make informed investment decisions. *SEC v. Ralston Purina Co.*, 346 U.S. 119, 73 S.Ct. 981, 97 L.Ed. 1494 (1953).

For these reasons we conclude that the CAP pre-need college tuition plans are investment contracts within the definitional bounds of the Guam Uniform Securities Act and are, therefore, subject to the registration requirements of such Act.

AFFIRMED.